OPINION OF THE COURT
Frank S. Rossetti, J.
Motion by claimants for additional allowances for attorney and appraiser fees under EDPL 701 is granted, in accordance with the following.
The State concedes as it must that the award of $37,850 is substantially in excess of its pretrial offer of $1,000. (See, EDPL 701; see, e.g., Matter of New York City Tr. Auth. [Superior Reed & Rattan Furniture Co.], 160 AD2d 705, 709-710.) However, defendant argues that the attorneys’ fee requested is excessive and that no additional allowance should be granted for claimants’ appraiser because the court supposedly relied on the State’s appraisal.
Claimants’ retainer agreement with their attorneys sets the letters’ fee at 50% of "any monies * * * recovered” in this claim above the State’s advance payment (i.e., its offer). Defendant contends that a one-third contingency fee is the most common one sought in EDPL 701 applications and claimants present no case law or other support for the high rate claimed here (see, e.g., Matter of Hoffman v Town of Malta, 189 AD2d 968, 969). On a relative, percentage basis, the result obtained was obviously extremely successful, but, on an absolute, monetary basis, a $30,395.67 attorneys’ charge (i.e., a $27,404.92 fee and $2,990.75 in disbursements) for a $37,850 recovery is an amount larger than necessary for just compensation. There should be a reasonable relationship between a fee allowance and the amount recovered. (See, National Fuel Gas Supply Corp. v Cunningham Natural Gas Corp., 191 AD2d 1003, 1004.) Also, claimants presented several bases for additional consequential damages which were ultimately found without *589 merit (see, infra, at 589). Absent these claims, this was a fairly straightforward case of the valuation of residential property, albeit with a cost to cure (see, infra, at 590-591). Thus we do not see this as an action where an extraordinary fee is necessary to achieve just compensation (see, EDPL 701). A one-third fee therefore appears to be an appropriate starting point for determining a proper additional allowance for attorneys’ fees.
A second problem with claimants’ attorneys’ fee request is the figure to which the contingency percentage is applied, to wit, the amount awarded plus interest. The use of this sum may be consistent with claimants’ retainer agreement, but we have recently held that the inclusion of interest injects an improper and arguably duplicative element in a just compensation determination under EDPL 701. (See, Matter of County of Nassau [Metro Resources], Sup Ct, Nassau County, Aug. 4, 1995, Rossetti, J., index No. 8339/87, at 2-3.) We find nothing in the circumstances of this case warranting a different holding and thus we find $12,300 (1/3) the appropriate starting point (i.e., 1/3 of $36,850 [$37,850 - $1,000]; see, supra, at 588).
As indicated, claimants presented evidence on three factors which they contended produced damages, but which the court rejected. Said claims were: (1) the taking highway widening project "isolated” subject to the point of causing consequential damages; (2) said project resulted in increased traffic and noise which warranted additional such damages; and (3) the taking created a loss of access warranting damages. In affirming this court’s rejection of these claims, the Appellate Division found the first two were not proven and the claimed loss of access was adequately compensated for by the found severance and cost-to-cure damages. (See, Meyers v State of New York, 215 AD2d 543.) A rule that appears to have evolved under EDPL 701 is that expenses incurred to develop and present unsuccessful or rejected claims should not be considered in determining the propriety or extent of an additional allowance. (See, First Bank & Trust Co. v State of New York, 184 AD2d 1034, affd 81 NY2d 392; Hakes v State of New York, 184 AD2d 1035, affd 81 NY2d 392.) The rationale seems to be that where proof has no effect on the main, property value award, it is not necessary for just compensation. (See, First Bank & Trust Co. v State of New York, supra; see also, Walsh v State of New York, 180 AD2d 290, 294.) Whether deemed in support of an inflated appraisal (see, National Fuel Gas Supply Corp. v Cunningham Natural Gas Corp., supra, at 1003) or undertaken in the hope of greater recovery (see, Walsh v State of New York, *590 supra), expenses associated, with rejected claims are not generally allowable. The standard under EDPL 701 is whether the expenses incurred were necessary for just and adequate compensation, not whether it was reasonable to incur those expenses. Hence, while we believe claimants’ isolation theory was something of a stretch, it was arguably an extension of existing law (see, Meyers v State of New York, Ct Cl, Mar. 15, 1993, Rossetti, J., claim No. 78127, at 4, affd 215 AD2d 543, supra; but see, infra, at 590-591; see also, at 592) and thus not frivolous (see, 22 NYCRR 130-1.1 [c] [i]). The purpose of EDPL 701 is neither to chill nor encourage attorney advocacy (see, Hakes v State of New York, 81 NY2d, supra, at 398). Rather, it is to permit an additional, discretionary allowance to ameliorate expenses which might otherwise diminish an appropriation award to something less than just compensation (see, Taylor v State of New York, 200 AD2d 273, 275). The determination under EDPL 701 thus properly looks back at the bases for said award (cf., Taylor v State of New York, supra) and disregards those expenses and services not contributing thereto. As indicated, whether it was reasonable to incur such expenses or provide such services is not the test (see, Hakes v State of New York, 81 NY2d 392, supra). Thus, we are making no value judgments as to the propriety or reasonableness of the rejected claims or the expenses and services associated therewith. We are only finding that said expenses and services were not necessary to achieve just compensation (see, EDPL 701).
 Of course, the rejection of said claims creates a problem as far as determining what expenses and attorney services were necessary for just compensation. We have found that the rejection of claimants’ superfluous claims supports the consideration of a customary rather than an extraordinary contingency fee rate (see, supra, at 588-589; see also, Matter of County of Nassau [Metro Resources], supra, at 3). We further find that these circumstances warrant an even further reduction below said customary rate (see, supra, at 589). In support of their said $27,404.92 fee, claimants’ attorneys allege that they spent 185.25 hours on this case and they claim that such justifies a fee of $29,610 on an hourly basis. However, they do not segregate out how many hours were spent prior to the State’s offer (see, Matter of County of Nassau [Metro Resources], supra, at 4), how many were allocable to the noted rejected claims (see also, infra, at 592) and how many were spent on the unsuccessful appeal. At trial claimants seemingly spent more time on the first of said rejected claims, but it would be pure *591 speculation for the court to make even a "guesstimate” with respect to any of the noted aspects of these attorneys’ services. Hence we believe a more supportable approach is to evaluate said services on the basis of the award actually made and the proof contributing thereto (see, supra, 589-590). As indicated, when said rejected claims are eliminated, this case involves the valuation of an improved residential lot and a vacant adjoining one which lost access to a rear road. Since the house on the improved lot and all other houses in the neighborhood fronted on another, more residential street, this loss of access had no value depressing effects beyond the reconfiguration of a garage and some loss of utility associated therewith (see, Meyers v State of New York, Ct Cl, Mar. 15, 1995, Rossetti, J., claim No. 78127, supra, at 4, n 2, 9-10). Thus the valuation problem presented was that of an improved residential lot, with a cost to cure and associated severance damages, and an adjacent, vacant residential lot. The cost to cure and said associated damages introduced additional considerations, but plainly this was not a difficult or complex case. As noted, claimants’ attorneys alleged that if their fee were computed on an hourly basis, it would total $29,610. However, while said attorneys provided an adequate general description of the work performed, they did not annex time sheets or otherwise break down how much time was spent on what. Accordingly, they must bear the consequences thereof. (Cf., Becker v Empire of Am. Fed. Sav. Bank, 177 AD2d 958.) Clearly, 185 hours is excessive for the noted valuation problem. Also, while this law firm is experienced in real property valuation cases, the hourly rates charged were excessive, at least for the latter years under consideration (cf., Becker v Empire of Am. Fed. Sav. Bank, supra, at 959). Therefore, considering all the relevant factors (see, Matter of County of Nassau [Metro Resources], supra, at 3),[1] we find $9,000 a fair and adequate additional allowance for attorneys’ fees.[2]
*592 As to the appraiser’s fee, we cannot agree with the State’s implication that the court relied solely on its appraisal. The land value and before value of the vacant lot found by the court were closer to claimants’ such values than defendant’s, and the court’s before value for the improved lot was twice as close to claimants’ value than the State’s. Admittedly, claimants’ proof with respect to the cost to cure was so inadequate that it had to be disregarded, but the responsibility for this deficiency also falls at least partially on claimants’ attorneys (see, Matter of County of Nassau [Metro Resources], supra), and we have included this consideration in our determination of their fee (see, supra, at 590-591). Further, because of said deficiency and a failure to particularize the value detriment from the loss of utility associated with the cost to cure, the court was constrained to adopt the State’s figures for said cost and value loss. Nevertheless, as initially observed, the appraisal of claimants’ real estate expert and his testimony at trial did contribute to some aspects of the court’s award and thus we believe that an additional allowance is warranted with respect to at least a part of his fees. We therefore find $3,000 a proper such allowance for claimants’ appraiser’s fee.
Accordingly, we find claimants entitled to additional allowances of $9,000 for attorneys’ fees and $3,000 for appraiser’s fees, and the clerk is directed to enter a supplemental judgment therefor.

. Defendant mentions that the court’s award is not substantially in excess of the State’s trial proof and in fact said award was only $850 or 2% above said proof. However, this allegation was in the context of the award being substantially in excess of the State’s offer (see, e.g., Matter of New York City Tr. Auth. [Superior Reed & Rattan Furniture Co.], 160 AD2d 705, supra). The proximity of the court’s award to said proof is basically just another way of saying that claimants’ attempts to obtain additional damages were rejected. Arguably, this fact could relate to the reasonableness of incurring the expense of going to trial, but, as indicated, such is not a material factor in determining what expenses were necessary to achieve just compensation (see, supra, at 4).

. [5] As observed, claimants’ attorneys also requested disbursements of $2,990.75 which were described as including "xeroxing, at *592 torneys [sic] travel expenses, messenger services, printing costs, stenographic fees and computerized legal research costs.” Printing costs would appear to be referable to the noted unsuccessful appeal and thus we do not deem them allowable (see, supra, at 3-4). Also, xeroxing, travel expenses and messenger services seemingly fall within the attorneys’ base fee. (Cf., Matter of Crannage [Schwartz], Sup Ct, Nassau County, May 30, 1995, Rossetti, J., index No. 24193-1-93, at 4.) Since said attorneys also failed to break down the amounts allocable to each item of their disbursements, the court cannot determine what amounts are allowable. Thus no allowance is being made for disbursements.