OPINION OF THE COURT
Stanley Parness, J.
In this concluded condemnation proceeding, claimant, pursuant to EDPL 701, requests an additional allowance for at *901 torney’s fees, and other expenses incurred. Condemnor’s preliminary objection based upon the timeliness of this request (postjudgment) has been rejected by the Court of Appeals (General Crushed Stone Co. v State of New York, 93 NY2d 23).
As to the merits of this EDPL 701 application, claimant seeks reimbursement in the total sum of $883,073 of which $20,298 represents the expert witness expenses, $723 miscellaneous expenses, and $862,052 comprises attorney’s fees. Title vested April 18, 1990. Claimant’s August 9, 1990 retainer agreement with counsel provided for a contingent fee of 20% of all sums recovered, including interest, over and above the amount of the outstanding mortgage balance in the sum of $2,419,532.
Condemnor’s initial prevesting offer of settlement in 1988 was in the sum of $2,200,000, which offer was eventually renewed postvesting, and which, pursuant to EDPL 304, claimant opted to take as an advance payment on April 15, 1991. Six months later, as of October 10, 1991, an additional $2,600,000 was offered in settlement and again accepted instead as an advance payment to bring the total received to $4,800,000. The court’s final award after trial in 1993 was in the sum of $5,750,108. Of the requested additional compensation for legal and appraisal fees of $883,073, the attorney’s fee of $862,052 is predicated on the terms of the contingent retainer with counsel applied to the excess of the final award plus interest over the mortgage.
EDPL 701 provides: “In instances where the order or award is substantially in excess of the amount of the condemnor’s proof and where deemed necessary by the court for the condemnee to achieve just and adequate compensation, the court, upon application, notice and an opportunity for hearing, may in its discretion, award to the condemnee an additional amount, separately computed and stated,' for actual and necessary costs, disbursements and expenses, including reasonable attorney, appraiser and engineer fees actually incurred by such condemnee.”
It is well settled that under EDPL 701 “[t]he statute requires two determinations: first, whether the award is ‘substantially in excess of the amount of the condemnor’s proof’ and second, whether the court deems the award necessary ‘for the condemnee to achieve just and adequate compensation.’ Where both tests are satisfied, the court may award reasonable fees.” (Hakes v State of New York, 81 NY2d 392, 397 [emphasis in original].) In employing the word “may” the Court emphasized the discretionary aspect of an EDPL 701 application. It did *902 this also by indicating that reimbursement for attorney’s fees and other costs “[is] not embraced in the constitutional right” to just compensation but “merely allows a court in condemnation cases to ameliorate the condemnee’s costs in cases it considers appropriate” (Hakes v State of New York, supra, at 398).
Several cases construing the language in EDPL 701 have held that the correct basis of comparison between the award and “condemnor’s proof,” to determine if the excess is sufficiently “substantial” to warrant EDPL 701 consideration, “is the difference between the State’s initial offer and the amount awarded.” (First Bank & Trust Co. v State of New York, 184 AD2d 1034.) Similarly, in Matter of New York City Tr. Auth. [Superior Reed & Rattan Furniture Co.] (160 AD2d 705, 709-710), the Court held that “the only interpretation which would fulfill the legislative intent of the amendment, and the policy of the EDPL, is that the city’s initial offer * * * be utilized for comparison purposes.” The policy referred to is
“to ensure that the condemnor, ‘at all stages prior to or subsequent to an acquisition * * * shall make every reasonable and expeditious effort to justly compensate persons * * * by negotiation and agreement’ * * *
“[o]ne of the purposes of the offer has always been to enable the landowner to obtain compensation for his land without incurring the expense and annoyance of litigation” (supra, at 709).
Interestingly Hakes (supra), though affirming First Bank & Trust Co. (supra), does not address the issue of timing of the “offer” for excess comparison to the award. Rather, the decision merely finds that though in the two cases it was considering the awards exceeded “condemnor’s proof,” it affirmed the trial court’s discretionary reduction of fees in one case and complete denial in another.
In the instant case, if the prevesting offer of $2,200,000 is considered “initial offers” for comparison purposes against the award of $5,750,108, then the resulting excess of $3,400,000+, more than a 200% increase, would clearly be “substantial” and would merit consideration for additional EDPL 701 compensation. On the other hand, if, as condemnor contends, the postvesting offers/advance payments totaling $4,800,000 are an appropriate “offer” basis for excess comparison, then the resulting difference of $950,000 between the advance payments and final award would not be sufficiently “substantial” under the facts herein to warrant condemnee’s $883,073 claim for costs and reimbursement.
*903 Though EDPL 701 essentially places upon the condemnor “the burden of properly appraising the property” (Lee-Hi Fuel Corp. v State of New York, 179 AD2d 494, 495) — this under threat of an award of additional compensation — condemnor’s argument is that if no consideration be given to postvesting offers/payments, there would be little incentive — other than saving interest — for condemnor to continue to “properly appraise” the. property postvesting and thereby generate increased payments. Indeed, such additional payments would have the effect of disclosing condemnor’s value position prior to appraisal exchange — obviously a strategic advantage to claimant’s counsel and appraisers. In the instant case, the advance payments of $4,800,000 were completed by October 1991; however, appraisals were not exchanged until April 1992. Whether postvesting offers/payments, particularly those prior to appraisal exchange, may appropriately be considered for excess comparison purposes with the final award should be determined in each case so that the condemnor has an opportunity to justify, if it can, the timing and amount of said offers as against whatever expense or liability claimant may have incurred by condemnor’s failure to make an adequate offer prior to vesting.
However, in the instant case, claimant was reasonable both in rejecting condemnor’s low $2,200,000 prevesting offer, which was “substantially” less than the property’s value, and in responding by retaining counsel and an appraiser at the time that it did. Condemnor in opposition offers no explanation for its low prevesting and initial postvesting offer of $2,200,000, a sum less than the mortgage balance. Nor does condemnor suggest that the engagement then of counsel was unreasonable. Condemnee, having been placed in the position of obligating itself under a retainer agreement which terms were no doubt influenced by the inadequate prevesting offer, should be permitted to utilize EDPL 701 to ameliorate the reduction in compensation sustained as a result of its retainer obligations.
However, the fees to be recouped under EDPL 701 must be “reasonable attorney fees.” “In determining a reasonable fee for an attorney, th[e] court must consider the following factors: the time and labor required; the difficulty of the questions involved, and the skill required to handle the problems presented; the lawyer’s experience, ability and reputation; the amount involved and the benefit resulting to the client from the services; the customary fee charged for similar services; the contingency or certainty of compensation; the results *904 obtained; and the responsibility involved [citation omitted]." (Matter of Siegel, 169 Misc 2d 620, 621; see also, Matter of New York City Tr. Auth., 150 Misc 2d 917 [Kassoff, J.].)
In this case it is unclear as to the extent, if any, of counsel’s efforts or expenses incurred prior to receipt by his client of the $4,800,000 advance payments. However, such payments are, in the main, self-generated by the condemnor in response to statutory direction which requires condemnor to offer in settlement 100% of condemnor’s “highest approved appraisal” (EDPL 303). Thus, if claimant’s attorney’s fees were to be based on a generous hourly rate retainer, the time charges incurred could not support the fee paid by claimant. However, here claimant opted for a contingency fee arrangement rather than an hourly rate. Obviously, variations on the contingency basis or percentage agreed to could produce more or less than the fee herein depending on the retainer terms in each case. While a contingency retainer may be appropriately considered on a fee application under EDPL 701, the court is not necessarily bound by its terms (see, Matter of City of Yonkers v Celwyn Co., 221 AD2d 437, 438, lv denied 87 NY2d 812). The test, as stated, is reasonableness and the burden of demonstrating reasonableness rests upon the proponent of a contingency fee (Beatie v DeLong, 164 AD2d 104, 108). What may be a reasonable percentage or contingency basis in one case may not be so in another depending on risk, sums involved, effort required, etc. However, in applying the criteria as set forth in Matter of Siegel (supra) to a contingent fee retainer any analysis must add one additional consideration, i.e., however “reasonable” the contingent fee may be from the client’s standpoint or enforceable between the parties under contract law, a fee sought by means of EDPL 701 is one to be paid by the condemnor from public funds without any input into the terms of the retainer. Condemnees may not set the standard of reasonableness. Nor should a condemnor’s obligation under EDPL 701 depend upon the negotiating ability of each party to the fee arrangement. For EDPL 701 purposes, fee retainers and costs incurred thereby must also be evaluated as to reasonableness from the further statutory requirement that claimants’ costs be not only “actual” but also “necessary.”
On the specific issue as to the reasonableness and necessity for the attorney fees and other costs arising out of the contingency retainer herein, it is appropriate to consider the fact that claimant elected to and received $4,800,000 in advance payments well before any significant litigation occurred (DeMarco v State of New York, 211 AD2d 610, 612).
*905 Under EDPL 304 (A) offers can either be accepted in settlement or a claimant may elect to accept such offers as an advance payment. In the latter case “such election shall in no way prejudice the right of a condemnee to claim additional compensation.” (EDPL 304 [A] [3].) Once claimant herein elected to accept the advance payment its claim was, in effect, reduced to whatever “additional compensation” it hoped to obtain from the court at trial. In this case continuing with the litigation to trial produced no more than an additional $950,000. Since the advance payments (some 80% of the total award) were essentially self-generated by the condemnor it cannot be seriously contended that the “costs * * * incurred by such condemnee” were “necessary” for the production of said $4,800,000. Further the “comparative reasonableness” of the appraisals exchanged and at trial preclude consideration of the additional $950,000 awarded for EDPL 701 consideration (Hakes v State of New York, 81 NY2d, supra, at 398). In sum, regarding claimant’s motivation to continue litigation after receiving the full advance payment, the fact is that the result obtained from such continued litigation does not warrant EDPL 701 reimbursement for attorney’s fees attributable thereto nor are witness fees or other trial costs warranted. While EDPL 701 may permit recoupment by a condemnee of its costs in a proper case, it is not intended to “creat[e] an incentive to condemnees to litigate” (Hakes v State of New York, supra, at 397).
However, as stated, claimant was disadvantaged by reason of condemnor’s initial low $2,200,000 offer/payment in that it became necessary to retain counsel. Thus, upon the subsequent receipt of the additional $2,600,000 (with interest — $2,945,550) only five months later said sum became subject to the terms of the retainer. Specifically, as a result of condemnor’s initial inadequate offer and counsel retention, claimant quickly incurred a fee liability against the excess of the $4,800,000 advance payments over the retainer contingent basis of $2,419,532, to wit, $584,568 — this before any significant litigation occurred.
Obviously such fee represents solely the mathematical application of the 20% contingent fee to the advance payment in the manner agreed to between counsel and claimant. While said percentage might appear reasonable in light of the contingent fees approved in the EDPL 701 cases cited by counsel, the condemnation awards involved and EDPL 701 fees actually granted in those cases were significantly less than those claimed herein and were also based upon awards brought about by counsel’s effort at trial.
*906 Thus, as distinguished from said cited cases the fees requested herein cannot be said to represent the value of any legal effort expended in production of the $4,800,000 in advance payments, which, as has been stated, were self-generated by the condemnor in compliance with statutory mandate.
Nevertheless, having been obliged to retain counsel as a result of condemnor’s initial inadequate offer, it is appropriate that EDPL 701 be available to claimant to mitigate to some extent its counsel costs.
Accordingly, under the circumstances herein, the court finds that 50% of the $584,568 in fees which counsel received as attributable to the advance payments paid to claimant, to wit, $292,284, to be reasonable and appropriate reimbursement herein, together with the cost of preparation of claimant’s appraisal, and said sums are so awarded.