Matter of City of New York (2003 NY Slip Op 51645(U))

[*1]

Matter of City of New York

2003 NY Slip Op 51645(U)

Decided on December 3, 2003

Supreme Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 3, 2003

Supreme Court, Kings County
In the Matter of the Application of the CITY OF NEW YORK, relative to acquiring title in fee simple absolute to certain real property where not heretofore acquired for the same purpose, required as a site for the ISLINGTON POND PARK located within the area generally bounded by Barlow Avenue, Miles Avenue, Elkart Street and Corbin Avenue in the Borough of Staten Island, City and State of New York
Index No. 2895/97

ABRAHAM G. GERGES, J
The following papers numbered 1 to 13 read on this motion:
 Papers Numbered
Notice of Motion/Order to Show Cause/
Petition/Cross Motion and
Affidavits (Affirmations) Annexed 1 - 5 
Opposing Affidavits (Affirmations) 6 
Reply Affidavits (Affirmations) 7 - 12
 Affidavit (Affirmation) 
Other Papers Exhibits to Notice of Motion 13 

Upon the foregoing papers, claimant Giffords Land East Ltd. (Giffords or claimant) moves for an order, pursuant to Eminent Domain Procedure Law (EDPL) § 701, granting an additional allowance of $884,666.90 for attorneys' fees, appraisal fees, and other necessary costs.
Facts and Procedural Background
This condemnation proceeding involves the taking of several parcels of property by the City of New York (the City) on May 8, 1997 for the creation of Islington Pond Park in the Great Kills section of Staten Island. On August 25, 1997, the City authorized an advance payment of $4,560,000; on July 21, 1999, an additional advance payment of $310,000 was authorized, for a total of $4,870,000. In appraisal reports exchanged on June 8, 1999, claimant valued the property at $12,500,000 and the City valued it at $6,101,055. In its rebuttal appraisal, claimant increased its valuation to $16,350,000. Following a non-jury trial, by decision dated September 13, 2002, the court awarded claimant $10,229,664, plus interest from the date of vesting, as just [*2]compensation for the property; this award is $5,359,664, or 111%, in excess of the advance payments made by the City. Since this award substantially exceeded condemnor's proof, claimant contends that an award of professional fees is appropriate pursuant to EDPL 701 to obtain adequate and fair compensation.
The City consented to the award of $519,416.70 in fees, payable as follows:
 $401,974.80 to Brandt, Steinberg & Lewis, attorneys (Brandt)

 43,750.00 to Brent Lally, appraiser 25,650.00 to Robert Englert, architect 23,500.00 to Joseph Morace, architect 19,335.00 to Todd Ettlinger, engineer and land surveyor 4,756.90 for stenographers' fees 450.00 to J.T.D. Land Services for title searches
An order awarding said sums was accordingly entered. The City, however, did not consent to an additional allowance in the amount of $365,250.20 for William W. Mizrahi, Esq., for legal fees allegedly rendered. The fee to which Mizrahi is entitled is therefore the only issue that remains to be determined herein.
The Parties' Contentions
In seeking an allowance for legal services rendered by Mizrahi, claimant argues that Giffords is a corporation, the shares of which are owned by Ludvik Hilman, Joseph Casavecchia, and Mizrahi; Mizrahi owns 46.288% of the outstanding stock. In affidavits submitted by Richard Steinberg, Esq., a member of Brandt; Mizrahi; and Casavecchia, Giffords alleges that Mizrahi has been its attorney since the inception of the corporation. Hence, when it became evident that claimant had to retain an attorney with regard to the taking of the property, Hilman and Casavecchia requested that Mizrahi look into the matter and obtain or submit a proposal. Mizrahi accordingly obtained a proposal from Goldstein, Goldstein & Rikon, P.C. (Goldstein), a leading condemnation firm, who agreed to represent Giffords for a fee of 33.33% of the amount of the award or settlement in excess of the advance payment, including interest; a copy of this proposal is annexed to Giffords' papers. At the urging of Hilman and Casavecchia, Mizrahi then made a proposal and was retained to represent Giffords for a fee of 15% of any award or settlement in excess of the advance payment, exclusive of any interest awarded. Because of Mizrahi's history in representing Giffords, the parties did not enter into a written retainer agreement. Mizrahi thereafter filed a notice of claim, coordinated the retention of all of the expert witnesses, reviewed their reports, made a pre-trial motion seeking to compel the City to exchange appraisal reports, and conducted extensive negotiations with the City.
 As the trial neared, however, Mizrahi concluded that it would be difficult for him try the case alone. He accordingly approached Goldstein again and the firm agreed to try the case for 15% of the award or settlement in excess of the advance payment. Mizrahi found that proposal to be unacceptable, since the total legal fee was capped at 15%. Mizrahi and Casavecchia then met with Brandt, who agreed to try the case for 7 ½% of the award in excess of the advance payments, exclusive of interest, plus disbursements. Brandt was retained in accordance with this agreement in August 2000. Thereafter, Mizrahi continued to represent Giffords as attorney of record and was present during the six day trial; his services were allegedly instrumental in claimant procuring just and adequate compensation for the property.
[*3]
Claimant therefore concludes that the attorneys' fees that it incurred should be measured in accordance with the retainer that Brandt claims it would have negotiated at the inception of the matter, or 7 ½% of the entire award, excluding interest, for a total of $767,225. Thus, since Brandt is entitled to an award of $401,974.80 in accordance with its retainer agreement, the difference of $365,250 should be paid to Mizrahi. In the alternative, claimant contends that since Goldstein agreed to try to case for a contingent fee of 33 % of the award in excess of the advance payment, including the interest awarded, a fee of 15% of the award above the advance payment, without interest, which is the combined fee sought by Brandt and Mizrahi, is reasonable.
In opposition, the City argues that Mizrahi is not entitled to any fee at all, since Giffords did not enter into a written retain agreement with him. In the alternative, Mizrahi did not furnish sufficient legal services to be entitled to the fee sought herein; if the court does find that Mizrahi is entitled to be compensated, he should be paid at the rate of $100 per hour. More specifically, the City alleges that the one pre-trial motion that Mizrahi made was resolved by stipulation. Further, there were no extensive negotiations, since claimant made no offer to settle the matter for anything less than the amount of its original valuation, or $12,500,000, and its demand increased when it prepared its rebuttal appraisal. The City also argues that Mizrahi provides no details with regard to the legal services he allegedly performed after Brandt was retained and the trial record does not indicate that Mizrahi played any significant role; similarly, during post-trial conferences, Mizrahi appeared along with one or two attorneys from Brandt. Moreover, since Giffords is a corporation, it is not unusual that a corporate officer sits at the counsel table during trial in order to supply factual information; thus, Mizrahi's presence at trial does not constitute the performance of legal services.
In response, Giffords alleges that the City's claim that Mizrahi did not significantly participate in the litigation after Brandt was retained is lacking in merit, as he assisted in the preparation of the direct and cross-examination of each witness, reviewed the testimony throughout the trial, and participated in preparing the post-trial memoranda and the post-trial argument, services that would not be evident in a review of the record. Claimant also asserts that the City's assertion that the law firm to which a corporate officer belongs should perform legal services for the corporation free of charge is nonsense. In addition, Giffords has advanced $75,000 to Mizrahi and will pay the balance due to him when the funds become available; to support this contention, a copy of a check in the amount of $44,160 that Giffords made payable to Mizrahi is attached. Finally, although Mizrahi did not keep an hourly log for the services rendered, since his fee was based upon a percentage of the award received, he endeavored to provide a detailed account, estimating that he spent a total of 348 hours on the matter.
The Law
"EDPL 701 'assures that a condemnee receives a fair recovery by providing an opportunity for condemnees whose property has been substantially undervalued to recover the costs of litigation establishing the inadequacy of the condemnor's offer'" (Town of Islip v Sikora, 220 AD2d 434, 436, quoting Hakes v State of New York, 81 NY2d 392, 397).[FN1]
[*4]
"Before Supreme Court may award a discretionary additional allowance under EDPL 701, two conditions must be satisfied: (1) the award must be 'substantially in excess of the amount of the condemnor's proof', the appropriate measure there being the difference between the initial offer and the amount ultimately awarded, and (2) the expenses must have been incurred 'to achieve just and adequate compensation.'"
(In re Village of Johnson City, 277 AD2d 773, 774; accord In re County of Tompkins, 298 AD2d 825, lv denied 100 NY2d 501). It has similarly been recognized that "[t]here should be a reasonable relationship between a fee allowance and the amount recovered" (Meyers v State, 166 Misc 2d 586, 588). In addition, a rule has evolved under EDPL 701 which provides that expenses incurred to develop and present unsuccessful or rejected claims should not be considered in determining the propriety or extent of an additional allowance, whether deemed in support of an inflated appraisal or undertaken in the hope of a greater recovery (see e.g. id. at 589; see also Application of City of New York, 254 AD2d 210; In re Village of Johnson City, 277 AD2d 773; Application of New York City Tr. Auth., 150 Misc 2d 917).
As is also relevant herein, it is now well settled that contingency fee arrangements are an acceptable factor to be considered by the courts in determining reasonable counsel fees (see e.g. Hoffman v Town of Malta, 189 AD2d 968, 969; Application of New York City Transit Auth., 150 Misc 2d at 921 [the Law Revision Commission to the 1987 Legislature stated that the courts can decide on a case-by-case basis whether a contingent fee arrangement is reasonable under EDPL 701 (1987 Report of NY Law Rev Commn, 1987 McKinney's Session Laws of NY, at 2007-2012)]). Further, it has been recognized that:

"however 'reasonable' the contingent fee may be from the client's standpoint or enforceable between the parties under contract law, a fee sought by means of § 701 is one to be paid by the condemnor from public funds without any input into the terms of the retainer. Condemnees may not set the standard of reasonableness."
[*5]
(In re New York State Urban Dev., 183 Misc 2d 900, 904; accord Application of New York City Transit Auth., id.). Thus, "[w]hile a contingency retainer may be appropriately considered on a fee application under § 701, the court is not necessarily bound by its terms" (In re New York State Urban Dev., 183 Misc 2d at 904, citing City of Yonkers v Celwyn Co., 221 AD2d 437, 438, lv denied 87 NY2d 812).
Further, contingency fees in varying amounts have been upheld as reasonable (see e.g. Application of New York Convention Ctr. Dev., 234 AD2d 167 [a contingency fee of 25% of part of the total recovery, as opposed to the standard 33 % of the entire recovery, coupled with the fact that the extent of the fee was largely attributable to petitioner's having originally undervalued the building so severely and, as found by the trial court, without a competent basis, was reasonable]; City of Yonkers, 221 AD2d 437 [court found that one-half of the demanded attorneys' fees as calculated pursuant to the sliding-scale contingency retainer agreement was reasonable]; Hoffman, 189 AD2d 968, 969 [contingency fee of 25% of the award was reasonable]; In re New York State Urban Dev., 183 Misc 2d 900 [court awarded counsel 50% of the fee demanded, which was based upon a contingency fee of 20% of the award in excess of the advance payments]). In making the determination of what constitutes a reasonable fee:

"th[e] court must consider the following factors: the time and labor required; the difficulty of the questions involved, and the skill required to handle the problems presented; the lawyer's experience, ability and reputation, the amount involved and the benefit resulting to the client from the services; the customary fee charged for similar services; the contingency or certainty of compensation; the results obtained; and the responsibility involved."
(In re New York State Urban Dev., 183 Misc 2d at 904 [citation omitted]; accord Application of New York City Tr. Auth., 150 Misc 2d at 921).
Discussion
Herein, claimant was awarded 111% of the value placed on the property by condemnor. In consenting to the award of fees to all parties except Mizrahi, the City implicitly concedes that the amount of the award is adequate to support an award of fees pursuant to EDPL 701. Thus, the City instead challenges Mizrahi's entitlement to a fee on the ground that the demand is not reasonable on numerous grounds.
As a threshold issue, the court rejects the City's contention that claimant did not incur any legal fees as a result of Mizrahi's representation because of the absence of a retainer agreement. In the first instance, the City offers no statutory support or case law precedent for its contention that an entitlement to receive a fee pursuant to EDPL 701 must be predicated upon a written retainer agreement and the court declines to impose such a requirement. Moreover, there is no dispute that Mizrahi provided legal services for claimant. In this regard, it has been recognized that a condemnor's initial low offer/advance payment necessitates the hiring of counsel, with the concomitant obligation to pay a contingency fee upon the recovery of a greater sum, without regard to the amount of work counsel must engage in order to obtain an award (Scuderi v State, 184 AD2d 1073, 1074; Application of New York City Tr. Auth., 150 Misc 2d 917, 920). Thus, Mizrahi's fees were "necessarily incurred to achieve just and adequate compensation" (Scuderi, [*6]id. at 1074 [citations omitted]), so as to entitle him to an award of attorneys' fees.
The City's contention that Mizrahi should not be entitled to any legal fees on the ground that he is a principal of Giffords is equally unpersuasive, inasmuch as the City does not deny that Mizrahi represented Giffords until Brandt was retained. Further, CPLR 321(a) provides that a corporation is required to appear by an attorney. Thus, in representing Giffords, it is beyond dispute that Mizrahi was acting in his capacity as an attorney, and not as a principal of Giffords, until the time that Brandt was retained. Whether Mizrahi is entitled to an award of counsel fees as co-counsel thereafter, however, goes to the issue of the amount of fees to which he is entitled. In this regard, the court agrees with the City's determination that the amount of the fee sought by Mizrahi is excessive.
In reaching this determination, it must be noted that the amount of the fee sought by Mizrahi, or the basis upon which the claim is made, is not clear from the arguments raised in claimant's papers. More specifically, claimant first argued that Mizrahi's fee should be based upon 7 ½% of the entire award, including the advance payment, excluding interest. This contention is lacking in merit, since it is well settled that an award of attorneys' fees should not be calculated including those portions of an award that represent the condemnor's offer/advance payments and/or interest awarded, since those sums are not obtained through the efforts of counsel, but are self generated by operation of law (see generally In re Village of Johnson City, 277 AD2d 773; In re New York State Urban Dev., 183 Misc 2d 900; Meyers v State, 166 Misc 2d 586; Application of New York City Tr. Auth., 150 Misc 2d 917). In fact, Mizrahi seemingly abandoned this position in his subsequent papers, instead arguing that his fee should be calculated in accordance his agreement with Giffords to cap his fee at 15% of the award, in excess of the advance payment, without interest. While this calculation would entitle Mizrahi to the same fee of $401,974.80 sought by Brandt, Mizrahi nonetheless failed to increase the amount of fees demanded. Nonetheless, the City's contention that the court should ignore the contingent fee arrangement claimed by Mizrahi and set his fee at the rate of $100 per hour is also unpersuasive, since there is no evidence in the record to support a finding that the customary charge in the area for the services performed would be $100 per hour (see Hoffman, 189 AD2d 968).
The court must accordingly set Mizrahi's fee by addressing the above discussed factors that must considered in determining whether a contingent fee is reasonable. With regard to the time and labor required, the court finds some merit to the City's contention that Mizrahi's continued representation of Giffords after retaining co-counsel was, in part, duplicative, and therefore requires a reduction of the fee demanded. Further, Mizrahi's representation is also, in part, attributable to Giffords' desire to have one of its principals present during the trial and at post-trial conferences. Since EDPL 701 does not permit the award of a fee to a condemnee who is not an attorney for the time spent at trial or at conferences, the fee sought by Mizrahi must be further reduced by some portion to account for this. In addition, while there is no doubt that the questions presented at trial presented difficult issues of law and fact, Mizrahi does not allege that he has any particular expertise in condemnation law. In fact, his determination to hire co-counsel when it became evident that a trial was imminent indicates that he was of the opinion that Brandt would be better qualified to try the case. Nor can claimant or Mizrahi deny that the attorney who actually tries a case has a far more difficult job than does co-counsel who assists in trial [*7]preparation; Mizrahi's award should therefore be less than the fees paid to Brandt to reflect this fact.
Further, while claimant argues that the fee demanded is less than the customary 33 % fee proposed by Goldstein, claimant cites no authority that supports a finding that a fee of this amount should be awarded by the court, particularly where the award in issue exceeds $5,000,000. Finally, in addressing the benefit resulting to claimant from the services rendered by counsel, the court notes that while the award of $10,229,664 was $5,359,664 above the City's advance payments, it was $6,120,336 less than the sum of $16,350,000 that claimant sought to obtain at trial. Thus, while it is not possible to determine the precise dollar value of legal services rendered in an effort to obtain a greater award, the fee demanded must be reduced by some amount to reflect the time expended in seeking to support this inflated appraisal.
Conclusion
Accordingly, in considering all of the above factors, the court determines that the reasonable fee to be awarded to Mizrahi should be 2 ½% of the award, less the advance payment, or $133,992. This sum, plus the $401,974.80 previously awarded to Brandt, results in a total award of attorneys' fees of $535,966.40, or 10 % of the award, less the advance payments.
The foregoing constitutes the decision and order of the court.
E N T E R,
 J. S. C.
Decision Date: December 03, 2003
Footnotes

Footnote 1: EDPL 701 provides that:
"In instances where the order or award is substantially in excess of the amount of the condemnor's proof and where deemed necessary by the court for the condemnee to achieve just and adequate compensation, the court, upon application, notice and an opportunity for hearing, may in its discretion, award to the condemnee an additional amount, separately computed and stated, for actual and necessary costs, disbursements and expenses, including reasonable attorney, appraiser and engineer fees actually incurred by such condemnee. The application shall include affidavits of the condemnee and all parties that have incurred expenses on the condemnee's behalf, setting forth inter alia the amount of the expenses incurred."