Keating, J.
The City of New York petitioned Special Term to fix the amount of compensation due to it arising out of the condemnation of the elevated railroad structure on Third Avenue (hereafter the “El”). The statute under which the condemnation proceeding was brought (L. 1955, ch. 657) provides that the local area of benefit may be assessed the cost of acquiring and removing the El.
In this condemnation proceeding, the city, which had purchased the El from private owners in 1940, was both the condemnor and condemnee. The city as condemnee has been awarded $5,117,900.64 plus interest for certain quasi-easements of light and air, which actually consisted of a privilege to impair the light and air of the abutting property owners. One third of this amount was assessed against each of the following: the Borough of Manhattan, the City of New York and the abutting landowners.[1]
The intervenor in this action, the New York Life Insurance Company, owns four parcels of land located on Third Avenue out of more than 2,000 lots affected by the assessment. New York Life does not disagree with the-condemnation procedure in this case, which was specifically authorized by the 1955 enabling statute. It does contend, however, that the award of more than $5,000,000 for the quasi-easements of light and air is excessive. The award, it argues, should have been nominal because these ‘ ‘ easements ’ ’ were valueless.
It is clear that the El was not operating at a profit at the time of the condemnation. New York Life contends that, under settled principles of condemnation law, the condemnee should be entitled to no more than scrap value for the entire enterprise. This argument parallels, to a certain extent, that made by the Port Authority in Matter of Port Auth. Trans-Hudson Corp. (Hudson Rapid Tubes Corp.) (20 N Y 2d 457). In that case, we recognized the general principle that in condemnation proceedings the owner’s loss is ordinarily the measure of compensation, not the taker’s gain. (See, e.g., Boston Chamber of *298 Commerce v. Boston, 217 U. S. 189; McGovern v. City of New York, 229 U. S. 363; City of New York v. Sage, 239 U. S. 57.) Our conclusion was, however, that this general rule must yield when its application would effect an unjust result. We noted that certain decisions had deviated from the general rule in order to achieve equity between the parties.
Matter of City of New York (East 42nd St. El. R.R.) (265 N. Y. 170, affd. sub nom. Roberts v. New York City, 295 U. S. 264) (the “ Spur ” case) was such a decision. In the “ Spur ” case we affirmed the Appellate Division judgment that the owners of the 42nd Street Spur (an extension of the Third Avenue El from 42nd Street and Third Avenue to 42nd Street and Park Avenue) were entitled to an award of approximately $500,000 for the value of certain quasi-easements of light and air, despite the undisputed concession that the railroad owners were operating the Spur at a loss.
Some consideration of the background of the Spur case is essential to a determination of its effect here. In 1875, the Legislature enacted a statute (L. 1875, ch. 606) designed to promote the construction of steam operated railroads in New York State. It specifically provided for the organization of railroad companies to acquire franchises for the operation of elevated railroads. In a series of subsequent cases, we held that, notwithstanding the existence of a franchise, railroad companies could not, with immunity, impair the easements of light and air of the abutting property owners. (See, e.g., Story v. New York El. R. R. Co., 90 N. Y. 122; Kernochan v. New York El. R. R. Co., 128 N. Y. 559; Lahr v. Metropolitan El. Ry. Co., 104 N. Y. 268; Knoth v. Manhattan Ry. Co., 187 N. Y. 243.) Railroads were thus compelled to acquire ‘ ‘ title ’ ’ to these easements. The total amount paid by the railroad to owners of land abutting on the Spur, for damage to the fees, was approximately $500,000.[2]
When the city condemned the Spur, the railroad asked for compensation for the value of the “ property rights ” which it had acquired from the abutting landowners. We agreed with the Appellate Division that, although the franchise to operate *299 the railroad was worthless, nevertheless, compensation must be awarded the railroad for the value of the quasi-easements. The railroad contended that they were worth $3,600,000. This represented the appreciation in the value of the abutting landowners’ properties, which would be effected by the demolition of the Spur. Thus, it argued, if the Spur did not exist at this time and were about to be constructed, the elevated railroad cases would require payment to the abutting landowners of an amount equal to the capitalized depreciation in the value of their land, resulting from the construction of the Spur. This amount, equal to the appreciation in the land value which was presently to be effected by the demolition of the Spur, it claimed, was the true value of the “easements” which were being returned to the landowners.
The Appellate Division rejected this argument, concluding that, although the landowners must compensate the railroad for the return of the easements, their value was not to be computed on the basis of the $3,600,000 increase in the value of their land. The court stated: “ In the first place, no one to-day would acquire them [the quasi-easements] for the purpose of running an elevated railroad.” (Matter of City of New York [Manhattan Ry. Co.], 229 App. Div. 617, 628.)
In the second place, the court commented, although this action was ostensibly between the city and the railroads, actually the adversaries were the railroads and the abutting landowners, who were required to pay the amount of the award. Thus, the landowners were the real ‘ ‘ takers ’ ’ in this proceeding. To value the easements at an amount equalling the appreciation in land value would be to employ a “value to the taker” principle, instead of the settled “ value to the owner ” rule. (Matter of City of New York [Manhattan Ry. Co.], supra, p. 628.)
The court thus determined that the value of these rights was neither less nor more than the amounts which the courts had previously determined to be the cost of acquiring them.
‘‘ Since they were acquired upon a basis judicially determined, there is no middle ground between ascribing no value to them and valuing them for what has been judicially determined to be the amount by which the abutting property was damaged for all time in the future by the operation of the railroad. * * * The city should, therefore, pay for these rights upon *300 the basis of what has been judicially determined to be their value at the time of their acquisition (Matter of City of New York [Manhattan Ry. Co.], 229 App. Div. 617, 627, 629, supra.)
Matter of the City of New York (Manhattan Ry. Co.), as' affirmed by this court, thus stands for the proposition that, in the condemnation of an elevated' railroad structure, the condemnee must be awarded the value of the quasi-easements of light and air. Compensation is not dependent on whether or not the operation of the railroad is yielding a profit. The value of these easements is equal to the judicially determined cost of their acquisition.
The judicially determined cost of acquiring the easements in the instant case was $5,420,862.76. From this amount a credit of $302,962.12, which was the net sum received by the city from the demolition contractor, was subtracted, resulting in a net amount of $5,117,900.64.
The intervenor argues that we should overrule the Spur case and apply the general condemnation principle that a condemnee may be compensated only for its actual loss, thus precluding any award for the quasi-easements, since the El was losing money on its operation.
We recently determined that the Hudson and Manhattan Ry. Co. was entitled to compensation for its tunnels, notwithstanding the fact that it was losing money on its operation of the tubes. (Matter of Port Auth. Trans-Hudson Corp. [Hudson Rapid Tubes Corp.], supra.) Relying to a considerable extent on the Spur case, we reaffirmed its reasoning and holding, which applied general principles of justice to achieve an equitable resolution. There is no reason to depart from this determination, unless the application of the Spur decision would effect an unjust result in this particular case.
In the Spur case, the abutting landowners were receiving an increase in the value of their land amounting to $3,600,000. The railroad had lost money on the Spur and was to receive virtually nothing for its business under settled condemnation rules. Manifest justice, it appeared, demanded that they, who were receiving a huge unearned benefit from the demolition of the Spur, should reimburse, in part, those interests which were suffering a substantial loss.
*301 We take judicial notice that the value of the land abutting along the length of Third Avenue has substantially appreciated in value. The El covered more than 100 city blocks extending from Chatham Square in Manhattan to 147th Street in The Bronx (L. 1955, ch. 657). The city, on the other hand, purchased the El in 1940 for more than $164,000,000 and has lost money on its operation. It does not appear that application of the Spur decision will achieve an inequitable result in this case. In our view it is not unfair that the owners, who were paid some $5,000,000 for the quasi-easements around the turn of the century, should repay one third of this amount, when the city returns the easements to them far appreciated in value.[3]
The intervenor has argued, in addition, that, in the event of a determination that the Spur case retains its validity, the city-can only be reimbursed for that amount of the 1940 purchase price attributable to" the acquisition of the quasi-easements. As mentioned earlier, the city paid over $164,000,000 for all rights, title and interest in the El. Included in the cost to the city were the rights to impair the easements of light and air of the abutting landowners. No portion of this total amount was allocated to the quasi-easements of light and air. It would, of course, be difficult, if not impossible, for the city to demonstrate now the specific amount paid for the easements in 1940. The Spur case, however, does not dictate such a procedure. At the time that the Spur was condemned, the Manhattan Railway Company had leased it to the Interborough Rapid Transit Company (IRT) for a period of 999 years. (Matter of City of New York [Manhattan Ry. Co.], 229 App. Div. 617, 620, supra.) Neither our court nor the Appellate Division was of the opinion that the IRT, which was to share in the award, must show what portion of the amount paid for its lease was allocated to the acquisition of the quasi-easements. It would thus be a *302 departure from the Spur holding to decide now that the condemnee must show precisely the amount which it paid for the property rights of light and air, in order to be compensated therefor. Courts have subsequently applied the formula set forth in Spur, without regard to the specific amount paid by the city in cases such as this, where the city was both condemnor and condemnee. (See Matter of City of New York [Fulton St.], N. Y. L. J., March 7, 1942, p. 1012, col. 2; Matter of City of New York [Hudson Ave.], N. Y. L. J., March 7, 1942, p. 1012, col. 3; Matter of City of New York [Broadway], N.Y.L.J., March 7, 1942, p. 1012, col. 4.)
As we have stated: “It would be the occasion of great public injury, if a determination thus made could be inconsiderately unsettled and suffered again to become the subject of doubt ”. (Lahr v. Metropolitan El. Ry. Co., supra, p. 287.)
Moreover, recently in the Matter of Port Auth. Trans-Hudson Corp. (Hudson Rapid Tubes Corp.) (supra) case we reaffirmed the rationale of basing an award on equitable considerations, despite the fact that the present shareholders of the Hudson and Manhattan Ry. Co. were not those who had originally contributed to the cost of constructing the tunnels.
We conclude that remanding the case for a determination of the amount allocated from the 1940 purchase price to the easements would serve no useful purpose, would be inconsistent with both the Spur case and, to a certain extent, with Matter of Port Auth. Trans-Hudson Corp. (Hudson Rapid Tubes Corp.) (supra) and would not result in the achievement of any further equity between the parties. We, therefore, would affirm the award granted by Special Term.
An additional question regarding the amount of interest has been raised by the intervenor. It argues that the interest awarded for the 11 years which elapsed from the time the city took title to the El in 1955 to the decree in this action in 1966 constitutes a reward to the city “ for its own unconscionable delay in bringing this proceeding on for trial. ”
On this issue both Special Term and the Appellate Division held that interest was mandatory rather than discretionary under the Administrative Code.
It can be argued, of course, that the manifest intent of the provision could not have been to award interest in a proceeding *303 such as this, if the city, which is the beneficiary of the final award, unconscionably delayed, to the prejudice of the assessees, thereby unnecessarily increasing the prospective interest award.
A motion to dismiss on the ground of laches has been denied by Special Term ‘‘ In view of the special nature of this proceeding ’’. This constituted an exercise of discretion by Special Term, which is not reviewable by us on appeal, unless, of course, it amounted to an abuse, as a matter of law. No one could seriously argue that Special Term’s denial of the motion constituted an abuse of discretion, especially in view of the unusual nature of this proceeding and the additional fact that the Assistant Corporation Counsel in charge of this case died during the period ot delay. The statute mandates an award of interest. Although the city may have unduly delayed, nevertheless, the landowners benefited by having the use of the amount assessed against them during the 11-year period of delay. Only 4% interest was charged. We thus fail to see how the landowners were prejudiced since their money could have earned a greater return while the city was delaying. We see no reason, therefore, to disturb the interest award.
The order of the Appellate Division should be affirmed, with costs.

. The statute provided that “ The board of estimate is authorized to acquire by condemnation as an assessable improvement * * * the right to demolish and remove the elevated railroad structures.” Pursuant to this statute, the board passed a resolution providing that the cost be apportioned among the three beneficiaries.

. This was determined in Matter of City of New York (East 42nd St.) (141 Misc. 565 [1931]) where the court ruled that the ratio of the fee damage to that of the total award was 62 to 97.

. As one commentator has viewed it: In return for the judicially determined compensation, the railroad acquired the privilege to impair the light and air of the abutting landowners in perpetuity. Since the Spur was being demolished after such a small fraction of perpetuity had elapsed, there had been, in fact, a virtually total failure of consideration. Thus, the railroads were entitled to repayment when they returned these “ property rights ” to the landowners, now far appreciated in value. (See “Valuation of Easements in Condemnation of Elevated Railroads ”, Comment, 40 Yale L. J. 779; see, commenting on this, 40 Yale L. J. 1074, supra.)