[783 NYS2d 75]

# In the Matter of City of New York, Appellant, v Mobil Oil Corporation, Respondent.

Second Department, October 25, 2004

## APPEARANCES OF COUNSEL

*Michael A. Cardozo, Corporation Counsel*, New York City (*Paul T. Rephen, Rita D. Dumain* and *Rochelle H. Cohen* of counsel), for appellant.

*Goldstein, Goldstein, Rikon & Gottlieb, P.C.*, New York City (*Michael Rikon* of counsel), for respondent.

## OPINION OF THE COURT

SANTUCCI, J.P.

The issue raised on this appeal is one of first impression in this state. Specifically, we address whether evidence and testimony relating to environmental contamination and remediation costs should be considered in determining just compensation in a condemnation proceeding, when the condemnee is also subject to liability under a pending Navigation Law proceeding. For the reasons set forth below, we conclude that, under the circumstances of this case, evidence of remediation costs should not be admitted into evidence at the condemnation proceeding. The property at issue should be valued as if it had been remediated, and the condemnation award should be held in escrow pending resolution of the Navigation Law proceeding, in order that such escrow shall be available, if necessary, to satisfy the judgment rendered in the Navigation Law proceeding.

Factual Background

The claimant, Mobil Oil Corporation (hereinafter Mobil), was the owner of six acres of land in the Greenpoint section of Brooklyn which was used as a petroleum storage facility. Sometime between January 29, 1990, and February 6, 1990, approximately 50,000 gallons of petroleum were spilled from one of the storage tanks at this facility. Thereafter, Mobil entered into consent orders with the New York City Department of Environmental Protection and the New York State Department of Environmental Conservation wherein Mobil agreed to undertake remediation and removal of the oil which had contaminated the property. Mobil maintains that it has complied with these orders.

On September 19, 1997, the City of New York acquired the property through condemnation, pursuant to the Eminent Domain Procedure Law, in order to incorporate the land as part of the Newtown Creek Water Pollution Control Plant. The City alleges that after it acquired the property it determined that Mobil had not remediated the situation and that the land remained contaminated.

In connection with the condemnation proceeding, the City and Mobil exchanged appraisals of the value of the property. The Mobil appraiser valued the property at $10.3 million as of the date of the vesting, based on the highest and best value for "big box" commercial development. The valuation did not include any additional remediation costs associated with residual contamination of the property. The City's primary appraiser valued the property at a preliminary value of $2.6 million as of the date of the taking. However, this report also concluded that the net value of the property would be negative after a setoff for minimum cleanup and excavation in the amount of $3,704,399. Therefore, the City contended that Mobil was only entitled to nominal compensation of $1,000.

On or about September 19, 2000, the City commenced an action against Mobil under Navigation Law § 181 (1). The City claimed that Mobil was strictly liable for the costs and damages resulting from the remediation, cleanup, and removal of petroleum which Mobil had discharged onto the property.

Prior to the condemnation valuation trial, Mobil made a motion in limine to preclude "evidence of a claimed reduction in the fair market value of . . . property . . . arising from any set off for contamination cleanup and removal costs." Mobil argued that this evidence should be excluded in the eminent domain

proceeding due to the risk of "double liability" which could result if the City paid a decreased value for the condemned property in the proceeding, and subsequently recovered damages for the cost of remediation pursuant to the Navigation Law action. Mobil also argued that the City would receive a "windfall profit" from the cost of the cleanup because it sought to deduct the projected cost of cleaning up the property for industrial development, rather than the predicted cost of cleaning up the property for its intended use, a water pollution control plant.

In opposition, the City argued that evidence of environmental cleanup and removal costs should be considered in determining the fair market value of the property. The City contended that Mobil would, in fact, receive a windfall if the fair market value of the property was not reduced and Mobil successfully defeated the Navigation Law action. Additionally, the City argued that the cost of remediating the property for the purpose of utilizing it in its water pollution control plant was substantially greater than the costs associated with industrial development because more remediation and excavation would be needed. Thus the City claimed that it would not unfairly profit from such valuation. Finally, the City asserted that there was no relationship between Navigation Law damages and the fair market value of the property.

The Supreme Court concluded that "[u]nder the circumstances presented . . . allowing the City to reduce the value of the property in the condemnation proceeding, while at the same time requiring Mobil to pay both direct and indirect damages in the Navigation Law Action, is likely to produce 'an unfair result.'" As a result, the court granted Mobil's motion to "exclud[e] evidence at the trial . . . of any diminution in value of the property at issue by reason of claimed cleanup and remediation costs of a petroleum spill."

The Law

■ Preliminarily, a procedural point needs to be addressed. Mobil argues that the City's appeal should be dismissed because a party cannot appeal from an order that decides a motion in limine to exclude evidence. However, while "[i]t is correct to say that an order, made in advance of trial, which merely determines the admissibility of evidence is an unappealable advisory ruling" (*Rondout Elec. v Dover Union Free School Dist.*, 304 AD2d 808, 810 [2003]; *see Vesperman v Wormser*, 283 AD2d 637 [2001]), in fact, Mobil's motion to preclude sought far more than a mere evidentiary ruling. By precluding the evidence

regarding diminution in value, Mobil sought to affect the amount of compensation for which the City would be liable in the condemnation proceeding. Since compensation is the only issue involved in a condemnation valuation proceeding, Mobil's "in limine" motion was the functional equivalent of a motion for summary judgment. As this Court has recently stated, "[a]n order deciding such a motion clearly involves the merits of the controversy (*see* CPLR 5701[a] [2] [iv]) and affects a substantial right (CPLR 5701 [a] [2] [v]) and thus is appealable" (*Rondout Elec. v Dover Union Free School Dist., supra* at 811; *see Marshall v 130 N. Bedford Rd. Mount Kisco Corp.,* 277 AD2d 432 [2000]; *Campaign for Fiscal Equity v State of New York,* 271 AD2d 379 [2000]; *Qian v Dugan,* 256 AD2d 782 [1998]). Therefore, the appeal should not be dismissed.

■ Turning to the merits, it is instructive to first review the well-established principles which govern the taking of real property by eminent domain. The Fifth Amendment to the United States Constitution provides that "private property [shall not] be taken for public use, without just compensation" (US Const Fifth Amend). The New York State Constitution similarly provides that the owner receive "just compensation" for property taken for a public purpose (NY Const, art I, § 7 [a]). "The constitutional requirement of just compensation requires that the property owner be indemnified so that he may be put in the same relative position, insofar as this is possible, as if the taking had not occurred" (*City of Buffalo v Clement Co.,* 28 NY2d 241, 258 [1971]). Nonetheless, "there is no . . . formula or set of . . . rules by which [just compensation can] be realized in dollars and cents" (*Matter of Rochester Urban Renewal Agency,* 45 NY2d 1, 8 [1978]). New York courts have generally examined the issue of just compensation in equitable terms and determined that just compensation is the fair market value of the property, i.e., "the price a willing buyer would have paid a willing seller for . . . the highest and best use of the property" (*Matter of Town of Islip,* 49 NY2d 354, 360 [1980]). It is also well settled that just compensation is measured by what the property owner has lost rather than what the condemner has gained (*see Matter of City of New York,* 21 NY2d 293 [1967]; *St. Agnes Cemetery v State of New York,* 3 NY2d 37 [1957]; *see also Brown v Legal Found. of Wash.,* 538 US 216 [2003]).

Here, both parties agree that the standard for just compensation is the fair market value at the time of the taking. However, as noted, Mobil contends that evidence of cleanup and remedia-

tion costs associated with the contamination of the property should not be admissible in determining the fair market value. New York courts have not yet spoken to this question, although it has been held that contamination and remediation costs are to be taken into account in determining real property tax assessments (*see Matter of Commerce Holding Corp. v Board of Assessors of Town of Babylon,* 88 NY2d 724 [1996]).

Presently there is a split of authority among courts from other jurisdictions which have addressed the admissibility of "contamination evidence" in an eminent domain proceeding. Some courts have held that evidence of both contamination and remediation costs is relevant to market value in eminent domain proceedings, while others have concluded that evidence relating to contamination and/or remediation should not be considered in "just compensation" proceedings (*see* 7A Nichols, Eminent Domain § 13B.03). For example, in *Northeast Ct. Economic Alliance, Inc. v ATC Partnership* (256 Conn 813, 776 A2d 1068 [2001]), the Connecticut Supreme Court held that evidence of environmental contamination and remediation costs may not be excluded, as a matter of law, from a condemnation proceeding. The court found that such evidence was admissible to show the effect, if any, that contamination had on the fair market value of the property on the date of the taking, including the "stigma to the property even after full remediation" (256 Conn at 834, 776 A2d at 1081). Other appellate courts have reached similar conclusions. In *Redevelopment Agency v Thrifty Oil Co.* (4 Cal App 4th 469, 474 n 9, 5 Cal Rptr 2d 687, 689 n 9 [1992]), the court stated that in an eminent domain proceeding, the subject of contamination and remediation costs was properly before the trier of fact since it was a "characteristic of the property which would affect its value" (*see also State of Tennessee v Brandon,* 898 SW2d 224 [Tenn 1994]; *Silver Cr. Drain Dist. v Extrusions Div.,* 468 Mich 367, 663 NW2d 436 [2003], *cert denied* 540 US 1107 [2004]).

As noted, other jurisdictions have held that contamination evidence or remediation evidence or both should be excluded in condemnation proceedings based on the fact that the condemnor can seek remediation costs or contribution in a separate action where the landowner's liability has been established (*see e.g. Housing Auth. of City of New Brunswick v Suydam Invs., L.L.C.,* 177 NJ 2, 826 A2d 673 [2003]; *Aladdin, Inc. v Black Hawk*

*County,* 562 NW2d 608, 614-617 [Iowa 1997]; *Department of Transp. ex rel. People v Parr,* 259 Ill App 3d 602, 633 NE2d 19 [1994], *appeal denied* 157 Ill 2d 497, 642 NE2d 1276 [1994]). Generally speaking, these jurisdictions conclude that the condemnee's liability for environmental contamination should not be adjudicated in an eminent domain proceeding without the safeguards that are set forth in the appropriate proceedings statutorily provided for this type of proceeding. In the case of *Housing Auth. of City of New Brunswick v Suydam Invs., L.L.C.* (177 NJ at 23, 826 A2d at 686, *supra),* the Supreme Court of the State of New Jersey stated:

> "When property is devalued for contamination in condemnation, landowners first receive discounted compensation in the condemnation proceeding and then are subject to the full cleanup costs [under a separate "environmental" statute], thus suffering what is colloquially denominated as a 'double-take' . . . Under that scheme, the condemnor receives a windfall by ultimately obtaining the property in a remediated state at the condemnee's cost, yet paying a discounted price due to the contamination . . . We think that is fundamentally unfair." (Citations omitted.)

In the case at bar, we concur with our colleagues in New Jersey and conclude that it would be "fundamentally unfair" to allow the City to value the property as contaminated for condemnation purposes, and yet still recover the remediation costs.

The condemnation of property which has been affected by petroleum discharge necessarily implicates other liability considerations (*see* Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 USCA §§ 9601—9675 [CERCLA]; Navigation Law § 170 *et seq.;* Spill Compensation and Control Act, NJ Stat Ann § 58:10-23.11). Indeed, Navigation Law § 170 states that "[t]he legislature intends by the passage of [article 12 of the Navigation Law] to provide liability for damage sustained within this state as a result of the discharge of . . . petroleum." The law also provides that "[a]ny person who has discharged petroleum shall be strictly liable, without regard to fault, for all cleanup and removal costs and all direct and indirect damages" (Navigation Law § 181 [1]). Finally, the law permits virtually no defense to be interposed other than "war, sabotage or governmental negligence" (Navigation Law § 181 [4]). In light of the intent behind such legislation, as well

as its imposition of absolute liability, it would be improvident to completely ignore the potential consequences of this law when undertaking the valuation of petroleum-contaminated property in an eminent domain proceeding. Therefore, the fact that a condemnee may face potential liability under the Navigation Law must somehow be acknowledged within the confines of an eminent domain proceeding.* We conclude that the most efficacious way to accomplish this "acknowledgment" is the method advocated in *Housing Auth. of City of New Brunswick v Suydam Invs., L.L.C. (supra)*, to wit, to value the condemned property as if remediated, but to hold in escrow any condemnation award pending the outcome of the Navigation Law proceeding.

By excluding evidence of remediation costs in an eminent domain proceeding, the potential that the condemnee may incur a "double taking" is obviated. Furthermore, it is logical that the subject of "cleanup" costs which arise as a result of petroleum contaminated property be handled in a proceeding commenced pursuant to the Navigation Law, i.e., legislation which was enacted to address this very issue. In fact, the statute speaks to various topics, such as third-party liability, which could not even be effectively raised in a condemnation proceeding (*see Housing Auth. of City of New Brunswick v Suydam Invs., L.L.C., supra*). We thus conclude that evidence of the costs of remediation should not be admitted into this condemnation proceeding.

At the condemnation proceeding, the property should be valued "as if remediated." It must be pointed out that valuation of property "as if remediated" is not exactly equivalent to valuation of "clean" property. As stated by Professor Nichols in his treatise on eminent domain, "even after remediation 'stigma' may persist, depressing value below 'fair market value' " (7A Nichols, Eminent Domain § 13B.04 [1]; § 9A.07; *see Matter of Commerce Holding Corp. v Board of Assessors of Town of Babylon*, 88 NY2d 724, 732 [1996], *supra*; *Matter of Allied Corp. v Town of Camillus*, 80 NY2d 351, 356 [1992]; *Housing Auth. of City of New Brunswick v Suydam Invs., L.L.C., supra* at 685; *SCA Servs. of Ind., Inc. v Thomas*, 634 F Supp 1355 [1986]). Thus the term "as if remediated" takes into account any residual stigma which may attach to real property as a result of the fact that it was previously contaminated.

---

* It should be noted that in the matter before us, a Navigation Law proceeding has already been commenced. Therefore, there is clearly more at stake than the mere potential of such a proceeding (*cf. Northeast Ct. Economic Alliance, Inc. v ATC Partnership, supra*).

Accordingly, the Supreme Court properly granted Mobil's in limine motion to preclude any evidence of remediation costs in determining the fair market value of its property in the condemnation proceeding. In order to prevent any potential windfall to either side, we remit the matter to the Supreme Court, Kings County, with instructions to hold in escrow any award that may be rendered in the condemnation proceeding until the conclusion of the Navigation Law proceeding, and that the proceeds of the condemnation award shall first be utilized to satisfy whatever judgment is recovered in the Navigation Law proceeding.

Thus, the order is affirmed insofar as appealed from, with costs.

KRAUSMAN, MASTRO and RIVERA, JJ., concur.

Ordered that the order is affirmed insofar as appealed from, with costs, and the matter is remitted to the Supreme Court, Kings County, for further proceedings in accordance herewith.