OPINION OF THE COURT
Abraham Gerges, J.
Claimant Exxon Mobil Corporation moves for an order, pursuant to Eminent Domain Procedure Law § 701, awarding it an additional allowance in the amount of $3,744,378.15 for actual and necessary costs, disbursements and expenses incurred.
Facts and Procedural Background
The City of New York acquired title to property formerly owned by Mobil Oil Corporation (hereinafter, Mobil Oil and its successor, Exxon Mobil, will be referred to as Mobil) on September 19, 1997 for use as part of the Newtown Creek Water Pollution Control Plant. As is also relevant herein, on or about September 19, 2000, the City commenced an action pursuant to Navigation Law § 181 (1), claiming that Mobil was strictly liable for the costs and damages resulting from the remediation, cleanup, and removal of petroleum which Mobil had previously discharged onto the property (City of New York v Mobil Oil Corp., Sup Ct, Kings County, index No. 32613/00 [the Navigation Law action]).
*818 There has been extensive motion practice and numerous court conferences in this proceeding since its inception. Briefly summarized,[1] Mobil initially prepared a notice of claim on September 19, 1997. Mobil was then compelled to make a motion, which was returnable on April 16, 1998, to obtain an advance payment. As a result, an advance payment in the amount of $809,540, plus interest of $48,040.10, was made available on September 15, 1998; title issues were resolved and the payment was collected on April 16, 1999. On March 31, 2000, Mobil then served a motion seeking an order compelling the City to exchange its appraisal report. As a result of this motion, appraisal reports were exchanged on May 10, 2002. In its report, the City’s appraiser valued the subject property at $2,600,000, based upon the highest and best use for industrial development; the appraiser opined that after deducting the cost of demolition and the estimated future cleanup, which exceeded the value of the property, claimant should be awarded only the nominal sum of $1,000. By report dated February 18, 2000, Jerome Haims and Eric Haims of Jerome Haims Realty, Inc. (Haims), valued the property at $42.50 per square foot, or $10,330,000, assuming that the highest and best use was for “big box retail.” On December 7, 2000, the City served a supplemental appraisal report on Mobil and on the same day a trial was scheduled for April 12, 2001. On December 13, 2000, Mobil rejected the City’s supplemental appraisal report. On December 27, 2000, the City served a motion seeking to allow it to serve that report; the motion was granted by decision dated January 19, 2001. After additional reports were exchanged, at a pretrial conference held on October 25, 2001, the trial was scheduled for July 18, 2002.
On February 2, 2002, Mobil filed an in limine motion seeking an order excluding evidence at the condemnation trial of any diminution in the value of the property by reason of the remediation costs claimed in the Navigation Law action; the City cross-moved for additional discovery. By decision dated October 8, 2002, this court granted the motion and the cross motion (Mobil Oil Corp. v City of New York, 2002 NY Slip Op 50713[U] [2002]). The City appealed the decision. By motion served on March 18, 2003, Mobil moved to dismiss the appeal; by decision *819 entered on May 6, 2003, that application was denied. By decision dated October 25, 2004, the Appellate Division affirmed this court’s decision holding that evidence of the cost of environmental remediation should be excluded from the trial in the condemnation proceeding, but directed that the condemnation award be held in escrow pending the outcome of the Navigation Law action (12 AD3d 77, 85 [2004]).
On March 10, 2005, the City served a motion seeking additional discovery; that motion was denied by decision dated May 25, 2005. The trial was rescheduled to commence on September 19, 2005 because the City’s appraiser refused to testify, allegedly as the result of a fee dispute. By letter dated August 15, 2005, Mobil declined to stipulate that the City’s appraisal report could be admitted without the testimony of its expert at trial. When the City notified the court of its predicament at a conference on September 19, 2005, over Mobil’s objection, the court gave the City time to attempt to resolve the fee dispute. No agreement was reached and at a conference held on March 31, 2006, the court directed Mobil to exchange its appraisal report by May 30, 2006. By report dated April 24, 2006, Doris Silber of Jacques O. Tuchler & Associates valued the property at $24 per square foot, or $3,625,000, assuming that the highest and best use was for open storage of building materials. On July 17, 2006, Mobil filed a second in limine motion seeking to remove the issue of the demolition costs from the trial.
The trial commenced on July 26 and 27, 2006 and was adjourned because one of Mobil’s experts became ill. By letter dated August 14, 2006, the City advised Mobil that an additional advance payment in the amount of $2,825,460, plus interest in the amount of $1,503,224.23, was being deposited with the court. The trial continued on December 4, 5, 6, 7 and 8, 2006. By decision dated January 15, 2008, this court valued the subject property at $8,505,457; the parties were directed to hold the award in escrow until the conclusion of the Navigation Law action (Matter of City of New York, 18 Misc 3d 1118[A], 2008 NY Slip Op 50124[U] [2008] [the trial decision]). Mobil submitted an order and judgment that provided that interest on the award was to be calculated at 6%, compounded annually. The City proposed an order and judgment that provided that claimant would receive simple interest on the award. On February 21, 2008, this court signed Mobil’s order and judgment. The City nonetheless submitted a final decree which did not provide for compound interest; the parties then entered into a stipulation *820 pursuant to which the City’s right to appeal would be preserved although the final decree provided for compound interest. By a second separate and partial final decree dated April 3, 2008, this court awarded Mobil $8,505,457, with interest on the entire amount, excluding the advance payment, compounded annually at the rate of 6%. The City again appealed. By decision and order dated September 22, 2009, the Appellate Division modified the judgment by providing that the trial court should have applied the statutory rate of 6% simple interest and otherwise affirmed the trial decision (Matter of Newtown Cr. Water Pollution Control Plant Upgrade, 65 AD3d 1241 [2009]).
By letter dated November 13, 2009, Mobil notified the City that the Navigation Law action had been settled; by letter dated November 19, 2009, it notified the City that it would move for sanctions if an application was required to obtain the funds. By notice dated March 30, 2010, the City advised Mobil that $4,880,457, plus interest was available for payment, subject to proof of clear title. Mobil then brought a motion directing the release of the supplemental payment that had been deposited into the court; the City did not oppose the application and the court signed an order releasing the funds on March 26, 2010. Mobil and other claimants in nonrelated proceedings then filed an order to show cause dated March 9, 2010, directing the City to show cause why an order should not be entered compelling the City to make an immediate payment of the condemnation awards, plus interest; after this court contacted the Comptroller’s Office in an effort to facilitate the payment, Mobil was notified on April 6, 2010 that the funds were available. The Department of Finance then refused to release the funds because “the Order did not specifically direct the New York City Department of Finance and/or Commissioner of Finance to release said funds”; another order to show cause was filed seeking an order including the demanded language. Mobil collected its final award on April 28, 2010. On May 7, 2010, Mobil served the City with an order to show cause to resettle the court’s order directing the release of the supplemental advance payment to correct an error; the City did not oppose the application and the court signed the corrected order. On July 14, 2010, Mobil made an application to the Commissioner of Finance in order to obtain the deposit of the supplemental award, plus interest, if any. The supplemental advance payment was collected and distributed to Mobil on August 23, 2010.
*821 Mobil’s Contentions
In support of the instant motion, Mobil argues that it is entitled to an additional award of $3,744,378.15 for attorneys’ fees and necessary costs and disbursements incurred in obtaining just compensation. More specifically, it asserts that it paid attorneys’ fees in the amount of $3,329,625.07, based upon a retainer agreement dated September 11, 1997 that provided for a contingency fee of 25% of the difference between the City’s initial offer and the amount ultimately awarded as just compensation, as was agreed to between Mobil and Hancock & Estabrook, LLP (the Hancock firm), the firm initially retained by Mobil to represent it in this proceeding. The Hancock firm retained Goldstein, Goldstein & Rikon, EC. (hereinafter the predecessor and successor firms are collectively referred to as the Goldstein firm), to act to assist it in the proceeding. By letter agreement dated June 21, 2002, the Hancock firm was discharged and the Goldstein firm assumed primary responsibility for the condemnation proceeding under the same contingent fee arrangement.
Mobil explains that the Hancock firm’s attorneys’ lien was set at $237,831.50 on the basis of quantum meruit at the time that it was discharged; the fee was satisfied when the final award was made available. On May 4, 2010, the Goldstein firm sent the Hancock firm a check in the amount of $244,022.58 and the balance of the award was distributed in accordance with the second amended closing statement of collection of final award. The Goldstein firm collected an attorneys’ fee in the amount of $2,973,756.63 when the final award was made available, plus $118,036.94 when the supplemental advance payment was paid, for a total of $3,091,793.57.
Mobil argues that it is entitled to an additional allowance to cover the legal fees paid, which are calculated based upon the just compensation that was awarded, plus interest, since the fees are reasonable in view of the difficulty of the questions involved; the skills required to handle the issues presented; the lawyers’ experience, ability and reputation; the amount of time involved; the benefit that resulted from the services provided; the results obtained; and and the responsibility involved. In further support of its motion, Mobil asserts that the Goldstein firm has practiced eminent domain law exclusively since the firm was founded in 1923 and that counsel devoted a significant amount of time and effort to handling its claim. Mobil annexes a summary of the legal work that was performed by counsel in *822 support of its application to establish the complexity of the issues confronted and the enormity of the services provided. Mobil emphasizes that the firm was successful in convincing this court that an order should be issued precluding the introduction of evidence of environmental remediation at trial and convincing the Appellate Division to affirm that decision (12 AD3d 77). Counsel also convinced this court to value the subject property in its highest and best use as a big box retail store, over the City’s contention that the property should be valued for open storage and parking. On appeal, counsel further succeeded in convincing the Appellate Division that the principal amount of the award should not be disturbed (65 AD3d 1241).
Mobil also argues that the services rendered by its experts were necessary to obtain just and adequate compensation:
The services of its appraiser, Haims, were necessary for it to value the property; Haims was paid $138,787.50. Mr. Haims submits an affidavit in which he describes the services provided; he also annexes copies of the retainer agreement; bills tendered, including time records setting forth the number of hours worked and a description of the work performed; and copies of the checks received.
The services of Mitchel T. Wolfe, an architect, who prepared a zoning analysis of the subject property, were necessary to establish that the site was suitable for a big box retail operation; Mr. Wolfe was paid $65,445.92. Mr. Wolfe prepared a site sketch to demonstrate that such development was feasible, which was relied upon by Haims to appraise the property and by Martin Gross Associates (Gross Associates) to determine the costs that would be associated with clearing the lot and providing the fill necessary for development. In addition, Mr. Wolfe attended nine days of trial and testified regarding the costs associated with demolishing the oil tanks that were located on the property; his testimony also helped to establish that the demolition costs as estimated by the City were without merit. Mr. Wolfe also submits an affidavit in which he describes the services that he provided and annexes copies of bills tendered and checks received.
Schneider Engineering (Schneider) was paid $2,714.48, i.e., $2,064.48 for the preparation of a survey and $650 for a computer-aided design drawing that depicted an aerial view of the site. Copies of bills received and checks tendered for these sums are annexed.
Gross Associates prepared an engineering study that explained the costs associated with clearing the property and providing *823 the fill required to bring the property up to grade for development, as relied upon by Haims. Gross Associates proposed a fee of $21,500; $4,900 for additional work required on the report; and Ralph Bradford, an employee, collected an additional $3,236 for trial preparation and testimony. In his affidavit, Mr. Bradford describes the services that he rendered and he annexes copies of time records and checks received.
EEA, Inc., an environmental consultant, was retained to determine the range of costs that would be required for the remediation of the subject property so that it could be utilized for its highest and best use; the cost of remediation was an issue until Mobil made its in limine motion to preclude evidence of remediation at trial; EEA was paid $36,390. EEA argued in its report that the property’s environmental cleanup would not preclude development as a big box retailer and was included in Haims’ appraisal report. EEA’s analysis of the City’s comparable sales was also included in the addenda of Haims’ rebuttal report. In his affidavit, Allen Serper, the senior vice-president and cofounder of EEA, describes the services that he rendered and annexes copies of hourly billing statements and checks received.
Brian Kaminski, a site development manager for Greenberg Farrow Architecture, a company that did 100% of the front end work for Home Depot, conducting due diligence and preparing conceptual site plans for that company across the United States, testified that a Home Depot store could be developed on the subject property; he was paid $11,637. Mr. Kaminski also rebutted the testimony of the witnesses who testified on behalf of the City that the property was not a suitable site for a big box retailer. In his affidavit, Mr. Kaminski describes the services that he performed and attaches copies of hourly billing statements and checks received.
In addition, Mobil contends that it was required to pay $130,142.18 for nonexpert expenses as are detailed in the second amended closing statement of collection of final award, the closing statement of collection of supplemental payment and the closing statement of advance payment annexed to its moving papers. Included in this amount is an administrative fee in the amount of $97,772.08 paid to the City’s Department of Finance, which was implemented because the supplemental payment was held in escrow. Mobil argues that it should be reimbursed for this expense because although the Appellate Division order required that Mobil’s award be held in escrow pending resolu *824 tion of the Navigation Law action, there was no requirement that the award be deposited into an account that would be subject to an administrative fee.
Accordingly, Mobil seeks an award in the following amount:
Attorneys’ fees $3,329,625.07
Experts’ fees 284,610.90
Disbursements 130,142.18
Total $3,744,378.15
The City’s Contentions
The City concedes that Mobil is entitled to an additional allowance pursuant to EDPL 701, since the award that claimant received was substantially in excess of the amount of condemnor’s proof and that an additional award was required to achieve just and adequate compensation. The City contends, however, that Mobil should not receive more than $2,208,590.10, or $1,923,979.20 for legal fees ($8,505,457 - $809,540 = $7,695,917 x 25%) and $284,610.90 for expert fees. In so arguing, the City does not dispute Mobil’s contentions that an attorneys’ fee in the amount of 25% of the award is reasonable. It contends, however, that the fee should be calculated on the amount of the award before interest is added.
In addition, the City asserts that Mobil should not be awarded any disbursements, since many of the expenses for which Mobil seeks reimbursement are not reasonable and necessary to achieve an increased award. For example, the City contends that Mobil should not be awarded an additional allowance for charges incurred for legal research using Lexis and Westlaw, faxing, meals, photocopies, telephone charges, entertainment and travel. The City also points out that payments to Mr. Kaminski and to Schneider were included as expert fees and as nonexpert expenditures. The City also argues that Mobil is not entitled to recover any expenses that were incurred in obtaining the advance payment. During oral argument, the City contended that since neither the condemnor nor the court should be obligated to sift through all of the expenses that were billed to Mobil and claimed to be reimbursable expenses, Mobil’s request for disbursements in the amount of $130,142.18 should be denied in its entirety.
Mobil’s Reply
In reply, Mobil acknowledges that the amount of nonexpert disbursements should be reduced by $4,514.48, since a payment *825 of $1,800 to Mr. Kaminski and a payment of $2,714.48 to Schneider were included in error, as these amounts were also included in the amount of expert fees sought. Mobil otherwise argues that the additional fees in the amount of $3,739,863.67 that it demands are reasonable and justified.
The Law
As a threshold issue, it must be noted that
“[w]hile [the Court of Appeals] and the United States Supreme Court have both determined that reimbursement of litigation expenses does not fall within the constitutional right of just compensation for a taking, this fact cannot undercut the Legislature’s clear statutory directive that ‘just and adequate compensation’ cannot be achieved where the ultimate award is significantly impaired by costs necessary to demonstrate that the condemnor’s offer was substantially lower than it should have been (see, Hakes v State of New York, [81 NY2d 392, 398]; Taylor v State of New York, 200 AD2d 273; Walsh v State of New York, 180 AD2d 290; United States v Bodcaw Co., 440 US 202).” (General Crushed Stone Co. v State of New York, 93 NY2d 23, 27 [1999].)
As is relevant to the instant dispute, EDPL 701 was enacted to provide for an award of an additional allowance for actual and necessary costs, disbursements and expenses, including reasonable attorney, appraiser and engineer fees actually incurred by a condemnee.[2] In interpreting this provision, it has been held that “[t]he fees and costs allowed under EDPL 701 are not an automatic part of such compensation. To the contrary, we have long held that attorney fees and additional costs are ‘mere[ ] incidences of litigation’ ” (Hakes, 81 NY2d at 398, quoting City of Buffalo v Clement Co., 28 NY2d 241, 262 [1971]). Further, it *826 is well settled, that an award of an additional allowance pursuant to section 701 “requires two determinations: first, whether the award is ‘substantially in excess of the amount of the condemnor’s proof and second, whether the court deems the award necessary ‘for the condemnee to achieve just and adequate compensation’ ” (Hakes, 81 NY2d at 397). “The section assures that ‘a condemnee receives a fair recovery by providing an opportunity for condemnees whose property has been substantially undervalued to recover the costs of litigation establishing the inadequacy of the condemnor’s offer’ ” (General Crushed Stone Co., 93 NY2d at 26-27, quoting Hakes, 81 NY2d at 397). It must also be recognized that EDPL 701 “vests the trial court with discretion, ‘in order to limit both the incentive for frivolous litigation and the cost of acquiring land through eminent domain’ ” (Matter of Town of Islip v Sikora, 220 AD2d 434, 436 [1995], quoting Hakes, 81 NY2d at 397).
The court is also aware that in determining the amount of attorneys’ fees to be awarded, it is not bound by the party’s contingency fee retainer agreement, since it is required to assess reasonable attorneys’ fees (see e.g. Matter of City of New York, 52 AD3d 387, 388 [2008]; Matter of City of New York v Jamaica Arms Hotel, Inc., 44 AD3d 1040 [2007], citing Matter of New York Convention Ctr. Dev. Corp. [Recycling for Hous. Partnership], 234 AD2d 167 [1996]; Matter of City of Yonkers v Celwyn Co., 221 AD2d 437, 438 [1995], lv denied 87 NY2d 812 [1996]; Matter of New York State Urban Dev. Corp., 183 Misc 2d 900, 904 [2000]). In discussing the effect that a contingency fee retainer agreement has on an award of an additional allowance, this court recently explained that
“ ‘[i]t is now well settled that contingency fee arrangements are an acceptable factor to be considered by the courts in determining reasonable counsel fees (see e.g. Hoffman v Town of Malta, 189 AD2d 968, 969; Application of New York City Transit Auth., 150 Misc 2d [917,] 921 [the Law Revision Commission to the 1987 Legislature stated that the courts can decide on a case-by-case basis whether a contingent fee arrangement is reasonable under EDPL 701 (1987 Report of NY Law Rev Commn, 1987 McKinney’s Session Laws of NY, at 2007-2012)]). Further, it has been recognized that:
“ ‘however “reasonable” the contingent fee may be from the client’s standpoint or enforceable between the parties under contract law, a fee sought by *827 means of § 701 is one to be paid by the condemnor from public funds without any input into the terms of the retainer. Condemnees may not set the standard of reasonableness. ’
“ ‘(In re New York State Urban Dev., 183 Misc 2d 900, 904; accord Application of New York City Transit Auth., [150 Misc 2d 917]). Thus, while a contingency retainer may be appropriately considered on a fee application under § 701, the court is not necessarily bound by its terms (In re New York State Urban Dev., 183 Misc 2d at 904, citing City of Yonkers v Celwyn Co., 221 AD2d 437, 438, lv denied 87 NY2d 812).’
“(In re City of New York, 1 Misc 3d 911A, 4-5; accord Matter of City of New York v Jamaica Arms Hotel, 44 AD3d 1040, 1041 [2007] [the trial court was not bound by a contingency fee retainer agreement entered into by the claimant for representation in the prior appeal; it was only required to assess reasonable attorney’s fees]). In that decision, this court went on to note that contingency fees in amounts of up to one-third of the award have been upheld by the court (id. at 5, citing Application of New York Convention Ctr. Dev., 234 AD2d 167 [25% of the total recovery]; City ojf Yonkers, 221 AD2d 437 [one half of the amount requested pursuant to the sliding-scale contingency retainer agreement was found to be reasonable]; Hoffman, 189 AD2d 968 [contingency fee of 25% of the award was reasonable]; In re New York State Urban Dev., 183 Misc 2d 900 [10% of the award representing the advance payment, including interest, was found to be reasonable, which sum was 50% of the 20% contingency provided in retainer agreement]; see also Meyers v State, 166 Mise 2d 586, 589 [1995] [the court rejected an attorneys’ fee of 50% of any monies recovered above the State’s advance payment, as provided in claimant’s retainer agreement, and instead found that a one-third fee of the award, without interest, was an appropriate starting point for determining a proper additional allowance for attorneys’ fees]).” (Matter of City of New York, 24 Misc 3d 1251[A], 2009 NY Slip Op 51948[U], *7 [2009].)
*828 Turning to the issue of whether a claimant is entitled to an award of attorneys’ fees premised upon the final award, including interest, the court further explained that
“it has been held, in interpreting Condemnation Law § 16(2), the predecessor to EDPL 701, that ‘[t]he court erred ... in computing the additional allowance upon the interest of the award as well as upon the award itself (New York State Urban Dev. Corp. v Goldfeld, 54 AD2d 1099, 1100 [1976], citing Matter of County of Westchester v Baruch, 247 NY 398, 401 [1928]; Matter of Schmieder, 130 Misc 136, 142 [1927]; Matter of Board of Water Supply of City of New York, 75 Misc 150, 151 [1912]; accord In re City of New York, 2003 NY Slip Op 51645U at 6 [it is well settled that an award of attorneys’ fees should not be calculated including those portions of an award that represent the interest awarded, since those sums are not obtained through the efforts of counsel, but are self generated by operation of law]). In contrast, however, it has also been held that an award of a contingency fee in the amount of 33% of the difference between the court’s award, with accrued interest, and the defendant’s advance payment, was proper and reasonable, given the amount of time and labor required, the difficulty of the issues presented, the level of skill required of this matter, the benefit resulting to claimant from the attorney’s skill and the results obtained (Carbone v State of New York, 13 Misc 3d 1246A, 2006 NY Slip Op 52364U [2006]; see also In re Edgecombe Road, 128 AppDiv 432, 436 [1908], affd 194 NY 545 [1909] [since petitioner was entitled to one-half of the award, he was entitled to it as of the date when the property was taken, so that he was entitled to interest on it until the same was paid]).” (Matter of City of New York, 2009 NY Slip Op 51948[U], *8.)
The Retainer Agreements
As is relevant to the issue of the additional allowance to be granted to Mobil, the September 11, 1997 retainer agreement that Mobil entered into with the Hancock firm provides that “[f]or this matter, we have agreed upon the following billing arrangement:
“Your firm will be paid a contingency fee of twenty-five percent (25%) of the difference between the *829 Condemnor’s initial offer and the amount ultimately awarded as compensation to Mobil, plus ordinary and customary out-of-pocket expenses.
“We understand that you will be using the services of the New York City firm of Goldstein, Goldstein & Rikon, EC., to assist with certain aspects of this matter. Your firm will be responsible for the Gold-stein firm’s fees and Mobil will have no liability for any of the Goldstein firm’s billings.” (Emphasis added.)
As is also relevant herein, the June 21, 2002 retainer agreement that Mobil entered into with the Goldstein firm provides that
“[y]ou previously were retained by [Mobil] to represent its interests in the captioned matter, as co-counsel with John R. Varney, Esq. of Hancock Estabrook, L.L.E This is to confirm my request in our telephone conversation on May 29, 2002, that you continue to represent [Mobil] in the captioned matter, but that you now assume primary responsibility for the condemnation litigation arising from that matter, under the same contingent fee arrangement provided for in your original retention . . .
“In accordance with the terms of your original engagement, as set forth in the letter from Frank Giampa to Jack Varney, dated September 11, 1997, Goldstein, Goldstein, Rikon & Gottlieb, P.C. and Hancock & Estabrook will share a contingency fee of twenty-five percent (25%) of the difference between the City of New York’s initial offer of compensation for the taking, and the amount ultimately awarded as compensation to [Mobil], plus ordinary and customary out-of-pocket expenses.” (Emphasis added.)
Discussion
As a threshold issue, the court finds that the services of two law firms were not necessary to achieve just and adequate compensation. In this regard, it must be emphasized that Mobil itself reached this conclusion when it discharged the Hancock firm and asked the Goldstein firm to assume primary responsibility pursuant to the June 21, 2002 retainer agreement. Nor can Mobil claim that the Goldstein firm did not provide adequate services in that the firm secured a judgment valuing the subject property at $8,505,457. Moreover, Mobil’s fee arrange *830 ment with both the Hancock firm and the Goldstein firm provided that the 25% contingency fee payable to counsel would be shared between the two firms. Accordingly, the court declines to award an additional allowance to compensate Mobil for either the legal fees or the disbursements paid to the Hancock firm.
The court further finds that under these circumstances, and as is conceded by the City, the services provided by the Goldstein firm and by the experts retained by it were necessary to achieve adequate and just compensation, since without them, Mobil could not have succeeded in convincing the court that the property was suitable for development as a big box retailer, or more specifically, as a Home Depot, with a value of over $8,000,000. In view of the complexity of the issues presented and the success achieved by the Goldstein firm, the court finds that a contingency fee in the amount of 25% of the award to be appropriate (see generally Jamaica Arms Hotel, 44 AD3d at 1041 [continency fees of up to one third of the award have been upheld by the court]; New York Convention Ctr. Dev. Corp., 234 AD2d 167 [25% of the total recovery was reasonable]; City of Yonkers, 221 AD2d at 438 [one half of the amount requested pursuant to the sliding-scale contingency retainer agreement was found to be reasonable]; Hoffman, 189 AD2d 968 [contingency fee of 25% of the award was reasonable]; New York State Urban Dev. Corp., 183 Misc 2d 900 [10% of the award representing the advance paymént was found to be reasonable, which sum was 50% of the 20% contingency provided in the retainer agreement]).
The court further finds that under the circumstances of this case, the allowance of attorneys’ fees awarded to Mobil should be calculated upon the award, including interest, so that Mobil will be awarded an additional allowance in the amount of $3,091,793.57, as calculated by the Goldstein firm (see generally Matter of Board of St. Opening & Improvement of City of N.Y., 128 App Div 432, 436 [1908]; Carbone, 13 Misc 3d 1246[A], 2006 NY Slip Op 52364[U] [2006]). In so holding, the court emphasizes that this proceeding was commenced on August 8, 1997 and title to the property vested in the City on September 19, 1997. Although an advance payment in the amount of $809,540, plus interest of $48,040.10 was made available on September 15, 1998 and was collected on April 16, 1999, the final payment of approximately $7,000,000 more was not collected until April 28, 2010, with the supplemental payment being distributed on *831 August 23, 2010. Accordingly, as this court has previously held, “the award of attorneys’ fees should be calculated upon the amount of interest awarded, since the Firm was deprived of use of its fee, which would have been received years earlier if the City had compensated claimant in a timely fashion” (Matter of City of New York, 2009 NY Slip Op 51948[U], *9).
In so holding, the court also notes that the above summary of the procedural history of this proceeding reveals that the City did little to move the case forward on its own initiative. Thus, for example, almost every payment made required counsel to make a motion and more times than not, a court order was required. From this it follows that the City’s contention that the advance payment, or any other payment, was self-generated is disingenuous. Over the course of the proceeding, 32 motions were filed, including those discussed above. It also must be noted that in its first in limine motion, Mobil was successful in convincing this court to preclude the introduction of evidence of the cost of remediation in the condemnation trial, an issue of first impression in this jurisdiction, and it was successful in convincing the Appellate Division to affirm the decision.
Also significant is the fact that after the City’s appraiser refused to testify as the result of a fee dispute, Mobil was required to again prepare its trial strategy to address the second appraisal. At trial, Mobil and its experts succeeded in making a prima facie showing that it was reasonably probable that the subject site could be developed as a big box retailer and again was successful in convincing the Appellate Division to affirm the valuation placed on the property by this court. Accordingly, the court finds that the legal fee sought is reasonable in view of the amount of work preformed, the complexity of the issues addressed and the favorable results achieved (see generally New York Convention Ctr. Dev. Corp., 234 AD2d 167 [counsel was awarded the maximum fee allowed by the contingency agreement of $120,250, calculated at 25% of the difference between the court award and the offer, since the trial court’s decision to award $40,000 was found to be arbitrary and an abuse of discretion in light of the extreme length of the proceeding; the fact that the contingency fee sought was manifestly reasonable in that it sought only 25% of part of the total recovery, as opposed to the standard 33V3% of the entire recovery; coupled with the fact that the extent of the fee was largely attributable to petitioner’s having originally undervalued the building so severely and, as found by the trial court, without a competent *832 basis]; cf. Matter of Estate of Haynes v County of Monroe, 278 AD2d 823, 825 [2000], lv denied 96 NY2d 712 [2001] [additional allowance was denied were the substantial expenses of claimant were incurred not to achieve just and adequate compensation, but to develop and present the largely unsuccessful claim for consequential damages]). The case relied upon by the City to support its assertion that a contingency fee should not be based upon an award that includes interest, Matter of City of New York (52 AD3d 387 [2008]), does not compel a contrary result, since the court therein held that the court was not bound by a retainer agreement that provided for attorneys’ fees to be calculated as a percentage of the interest portion of the award, as well as the principal, since the court was required only to assess reasonable attorneys’ fees.
The court further finds that Mobil is entitled to an additional allowance to compensate it for the expert fees incurred, since the services of an appraiser, an architect, engineers, an environmental consultant and Mr. Kaminski were necessary to establish that the site could be developed for use as a big box retailer. In so holding, it is also noted that the City does not oppose the award of an additional allowance for these expert fees. Accordingly, Mobil is granted an additional allowance in the amount $284,610.90, as calculated by the Goldstein firm.
Turning to the issue of the amount of nonexpert fees that Mobil claims should be reimbursed, the court will first address the question of whether an allowance should be granted for the $97,772.08 administrative fee that was deducted by the Department of Finance when the money that was held in escrow was distributed. In so doing, the court first notes that the City does not specifically address the issue of whether Mobil should receive an additional allowance to compensate it for this expense. As a starting point for the analysis, the court notes that the City deposited the money with the Department of Finance in accordance with the decision of the Appellate Division, wherein that court directed that
“[i]n order to prevent any potential windfall to either side, we remit the matter to the Supreme Court, Kings County, with instructions to hold in escrow any award that may be rendered in the condemnation proceeding until the conclusion of the Navigation Law proceeding, and that the proceeds of the condemnation award shall first be utilized to *833 satisfy whatever judgment is recovered in the Navigation Law proceeding.” (12 AD3d at 85.)
As is also relevant to the resolution of the issue is CPLR 8010 (1), which provides that the Commissioner of Finance of the City of New York is entitled to receive 2% upon a sum of money paid out of court by him. Further, CPLR 2603 states that “[a] party entitled to the income of any property paid into court shall be charged with the expense of administering such property and of receiving and paying over the income thereof.”
In applying these provisions of law, the court first notes that inasmuch as the Appellate Division directed that the award be held in escrow, and did not direct the City to deposit the money with the court, there is merit to Mobil’s contention that since the City chose to deposit the funds with the Department of Finance, instead of depositing the funds with an escrowee who did not charge an administrative fee, the City should bear the cost. In the alternative, even if the Appellate Division’s direction were to be construed as requiring the money to be deposited with the court, the City would still be responsible for the administrative fee deducted from the escrowed funds. In so holding, the court relies upon the recent case of Hammerstein v Henry Mtn. Corp. (66 AD3d 1273, 1274 [2009]). Therein, it was held that although CPLR 2603 required the county to charge and withhold an administrative fee from the deposited money paid out to plaintiff, the court ordered that defendant mortgagor reimburse plaintiff mortgagee the amount of the deducted administrative fee, plus interest, reasoning that the reimbursement ensured that plaintiff would be made whole. Applying the rationale behind that holding to the facts of this case, the City should reimburse Mobil for the administrative fee that was deducted from the money held in escrow so that it receives the full amount of the award to which it is entitled.
This holding is also consistent with the well-established general principles that once a municipality takes possession of property, it is indebted to the owner in a sum equal to just compensation and that implicit in such compensation is an additional sum reflected by an interest rate commensurate with the existing economic conditions (see e.g. City of Ithaca v Ray, 35 AD2d 625, 626 [1970]); with EDPL 514 (A), which provides in pertinent part that “[s]ubject to the provisions of this chapter, a condemnee shall be entitled to lawful interest from the date of acquisition to the date of payment”; with EDPL 304 (D), which provides that “[n]o sum paid into court or deposited shall be *834 charged fees, commissions or poundage” (see generally Matter of City of New York, 11 Misc 3d 1080[A], 2006 NY Slip Op 50629[U] [2006]); and with Administrative Code of the City of New York § 5-327 (a), which provides, in relevant part, that
“[a]ll damages awarded by the court, with interest thereon from the date title to the real property acquired shall have vested in the city and all costs, charges and expenses which may have been taxed shall be paid by the city to the respective owners mentioned or referred to in the final decree or to the persons in whose favor such costs, charges and expenses were taxed.” {See generally Matter of City of New York, 17 Misc 3d 715 [2007].)
The court reaches a different conclusion with regard to the other expenses for which Mobil seeks reimbursement. While recognizing that it has the authority to award an additional allowance for necessary expenses that were incurred (see generally Hakes, 81 NY2d at 395; Matter of Williamsburgh II Urban Renewal Area [G.E.F. Holding Corp. — City of New York], 208 AD2d 548 [1994]; New York State Urban Dev. Corp., 54 AD2d 1099; Board of Educ., City School Dist. of City of Elmira v Daly, 23 AD2d 597 [1965]), the court finds that such an award in this case would be inappropriate. In so holding, the court finds that many of the expenses sought cannot be characterized as necessary to receive adequate and just compensation and are similarly not generally compensable when making an award of counsel fees.[3]
More specifically, this court has already held that “ ‘computer research is merely a substitute for an attorney’s time that is compensable under an application for attorney’s fees and is not a separately taxable cost’ ” (Matter of City of New York, 2009 NY Slip Op 51948[U], *10, quoting Noghrey v Town of Brookhaven, 17 Misc 3d 1102[A], 2007 NY Slip Op 51798[U], *7 [2007], quoting United States for Use & Benefit of Evergreen Pipeline Constr. Co., Inc. v Merritt Meridian Constr. Corp., 95 F3d 153, 173 [1996]; BD v DeBuono, 177 F Supp 2d 201 [2001]; accord Estate of Ali Hassan, NYLJ, July 23, 2008, at 31, col 2, 2008 NY Misc LEXIS 4850 [2008]). Further, the court finds that an award *835 of expenses incurred for copying and messenger services fall within the attorneys’ base fee and is accordingly not compensable (see generally Meyers, 166 Misc 2d 586). The court also finds that Mobil should not be reimbursed for the costs incurred for travel, including airfare; meals; and lodging (see generally Seinfeld v Robinson, 300 AD2d 208, 209 [2002]; Meyers, 166 Misc 2d 586; Estate of Robert Brown, NYLJ, May 21, 2008, at 33, col 4, 2008 NY Misc LEXIS 3092 [2008]; Estate of Ali Hassan, NYLJ, July 23, 2008, at 31, col 2, 2008 NY Misc LEXIS 4850 [2008]; Noghrey, 2007 NY Slip Op 51798[U], *7). In this regard, it is noted that while Mobil has the right to retain professionals who do not reside in the area, it is presumed that all of the services needed could have been provided by retaining professionals who maintain their office in the metropolitan area. Similarly, while counsel may choose to travel utilizing a car service, the expenses incurred for this expense will not be characterized as necessary to receive adequate and just compensation, particularly since the New York City metropolitan area is served by an adequate public transportation system.
The court also finds that the other miscellaneous expenses incurred, such as postage and telephone calls, are generally considered to be part of overhead and will similarly not be separately compensable (see generally Matter of Diamond, 219 AD2d 717 [1995] [with respect to disbursements, the tradition in Surrogate’s Court practice is that the attorney may not be reimbursed for expenses that the court normally considers to be part of overhead, such as photocopying, postage, telephone calls, and other items of the same matter]). Moreover, the court notes that although counsel submitted receipts and internal billing statements to support the demand for reimbursement, there is no explanation of why each of the expenses was incurred and the expenses are not referenced to the legal services provided.
Finally, although it is recognized that some of the expenses that were incurred may properly be compensable, the court agrees with the City that given the enormity of the expenses for which Mobil seeks to be compensated, the court declines to cull through the multitude of receipts and billing statements to determine which costs should be excluded and which costs may be appropriate. Moreover, given the amount of the attorneys’ fee awarded, or more than $3,000,000, Mobil and/or the Gold-stein firm has been given a more than sufficient additional al *836 lowance to pay the miscellaneous expenses incurred, particularly since the $30,000 requested is de minimis.[4]
Conclusion
For the reasons discussed above, Mobil’s motion is granted only to the extent of awarding it an additional allowance in the amount of $3,474,176.55 ($3,091,793.57 in attorneys’ fees + $284,610.90 in expert fees + $97,772.08 in disbursements).

. This summary of the proceeding is prepared in reliance upon the statement provided by Mobil in its moving papers, along with a review of the court’s file. It is also noted that the City does not argue that the Goldstein firm did not perform any portion of the legal services claimed to have been provided.

. EDPL 701 provides that
“[i]n instances where the order or award is substantially in excess of the amount of the condemnor’s proof and where deemed necessary by the court for the condemnee to achieve just and adequate compensation, the court, upon application, notice and an opportunity for hearing, may in its discretion, award to the condemnee an additional amount, separately computed and stated, for actual and necessary costs, disbursements and expenses, including reasonable attorney, appraiser and engineer fees actually incurred by such condemnee. The application shall include affidavits of the condemnee and all parties that have incurred expenses on the condemnee’s behalf, setting forth inter alia the amount of the expenses incurred.”

. Although some of the cases cited do not address an additional allowance awarded in condemnation proceedings, the court is nonetheless guided by the general principles followed in awarding attorneys’ fees in other actions and proceedings.

. Having denied Mobil an award of an additional allowance for nonexpert expenses incurred, the issue of the double counting for the fees paid to Mr. Kaminski and to Schneider is rendered moot.